**William POWELL, Appellant,**

v.

**Ira STACY and Louise Stacy d/b/a Sand Dollar Properties, Appellees.**

No. 2–03–001–CV.

Court of Appeals of Texas, Fort Worth.

July 24, 2003.

Rehearing Overruled Aug. 26, 2003.

Michael R. Burkett, Fort Worth, for appellant.

D. Nicholas Acuff, Hancock & Irby, L.L.P., Matthew W. Hancock, Fort Worth, for appellees.

PANEL B: DAY, LIVINGSTON, and WALKER, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

This appeal involves a suit to set aside a foreclosure sale of real property pursuant to a deed of trust. Appellant William Powell brings five issues challenging the trial court's conclusions of law that (1) all required statutory notices were given, (2) Powell was given an adequate opportunity to cure, and (3) the foreclosure sale was valid, and the trial court's implied conclusions that the foreclosure sale should not be set aside for inadequacy of consideration and the excessive principal and usurious interest listed in the notice of foreclosure was not an irregularity in the procedure that would render the foreclosure invalid. We affirm.

## Background Facts

Powell and Milton Stacy were equal owners of and partners in Lakeside Motor Sales, a used car business. Powell and Milton purchased the property at 8001 Jacksboro Highway for the business. Powell also used a trailer on the property as his residence. When Powell and Milton bought the property, each signed the note and deed of trust; the debt was further secured by a vendor's lien in the deed. In August 1999 Milton's parents, appellees Ira and Louise Stacy d/b/a Sand Dollar Properties, purchased the note and deed of trust.

In January 2000, Powell and Milton missed a payment on the note. Accordingly, the Stacys' attorney sent a notice of delinquency to Powell and Milton at 8001 Jacksboro Highway. That delinquency was subsequently cured. On May 15, 2000, the Stacys' attorney sent a notice of acceleration of all amounts due on the note, which the Stacys later withdrew because their attorney discovered Powell was living on the property, thus requiring them to send a homestead notice. *See* Tex. Prop.Code Ann. § 51.002(d) (Vernon 1995). On May 31, 2000, the Stacys' attorney sent Powell and Milton a letter indicating that the note was again past due and stating that the entire unpaid principal balance of the note, plus all accrued and earned interest, would become due if the past due amounts were not paid in full by June 20, 2000. The letter also indicated that payment arrangements could be made through the attorney. The letter contained a statement of principal owed on the note that was more than the amount owed and an interest rate in excess of the rate set forth in the note. Powell hired an attorney, who wrote the Stacys' counsel a letter asking for clarification of the amount owed on the note. The Stacys did not respond, and neither Powell nor Milton made any further payments on the note.

The Stacys did not accelerate the debt in June because they learned Powell had a potential buyer for the property. They instructed their attorney to wait on acceleration and foreclosure to see if Powell and Milton could sell the property. However, in November 2000, the Stacys instructed their attorney to send notice of acceleration and foreclosure on the debt.

On November 6, 2000, the Stacys' attorney sent a notice of acceleration and foreclosure to Powell and Milton at 8001 Jacksboro Highway. The notice again contained a statement of principal owed that was more than the amount owed and usurious interest in excess of what was actually owed. Powell did not receive the notice. He was no longer living on the property by then, but he never gave the Stacys a change of address, and 8001 Jacksboro Highway was the last known address they had for him. The Stacys did not know until November 11 or 12 that Powell had been living elsewhere. In addition, Powell was in jail from October 2000 to January 2001. The notice of acceleration and foreclosure was not sent to Powell's attorney.

The Stacys purchased the property at the foreclosure sale on December 5, 2000. Ira Stacy said he was not sure if anyone else bid for the property. After the Stacys bought the property, they leased it to Milton with an option to purchase. Milton has occupied the property continuously since the Stacys purchased the note.

## Analysis

### Standard of Review

■ Powell does not challenge the trial court's findings of fact; however, he does contend the trial court's conclusions of law are incorrect based on the facts. Conclu-

sions of law may be reviewed to determine their correctness based upon the facts. *Rogers v. City of Fort Worth,* 89 S.W.3d 265, 277 (Tex.App.-Fort Worth 2002, no pet.); *Forbis v. Trinity Universal Ins. Co.,* 833 S.W.2d 316, 319 (Tex.App.-Fort Worth 1992, writ dism'd).

### Notice and Opportunity to Cure

■ In his first two issues, Powell contends that the trial court erred in concluding that "[a]ll required notices to . . . Powell were given in accordance with law" and that Powell "was given a required statutory notice of default and opportunity to cure." Section 51.002(d) of the Texas Property Code provides:

> Notwithstanding any agreement to the contrary, the holder of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b). The entire calendar day on which the notice . . . is given, regardless of the time of day at which the notice is given, is included in computing the 20–day notice period . . ., and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20–day notice period.

Tex. Prop.Code Ann. § 51.002(d).

The May 31, 2000 letter was sent by certified mail and signed for by Powell.

The letter indicated that Powell and Milton had twenty-one days from the date of the letter in which to cure the default. Notice of acceleration and foreclosure was not given until November 6, 2000. Thus, Powell and Milton had one hundred fifty-nine days in which to cure any default before the entire amount of the debt became due.

Powell contends that he was denied an opportunity to cure because the May 31 letter specifically stated that payment arrangements could be made by contacting the Stacys' attorney, and the Stacys failed to adhere to this "express representation" by not responding to his attorney's attempts to clarify the total amount of outstanding principal due on the note. However, Powell admitted that he did not sign any checks for payments on the note after April 2000.[1] Additionally, the letter from Powell's attorney inquired only about the payoff amount of the loan and the total amount of principal the Stacys claimed was due; it did not dispute that Powell and Milton were in default. Powell and Milton had the opportunity to cure the default before acceleration of the debt by paying the installment payments due from April to November 2000; the fact that there may have been a dispute about the total amount of outstanding principal and interest due on the note *before* acceleration did not excuse Powell and Milton from making payments on the note from April to November 2000.[2]

■ Powell also claims that the Stacys owed him a duty of good faith and fair dealing and that they breached that duty

---

**1.** All business checks required both Powell's and Milton's signatures.

**2.** Although the trial court did conclude that Powell's failure to "tender the amount of the debt owed is excused," this conclusion appears to be in response to the Stacys' contention that Powell cannot obtain relief because

he failed to tender all amounts due under the note to the trial court. *See Lambert v. First Nat'l Bank,* 993 S.W.2d 833, 835–36 (Tex. App.-Fort Worth 1999, pet. denied) (holding that in order to be entitled to rescission of a void foreclosure sale, plaintiff must tender all amounts due under the note).

by (a) sending a default notice that listed an excessive amount of principal and usurious amount of interest and (b) not responding to his requests to clarify the amounts due under the note. Powell claims that because these actions were taken in connection with the note rather than the deed of trust, the good faith standard set forth in the Texas Uniform Commercial Code applies. *See* TEX. BUS. & COM. CODE ANN. § 1.203 (Vernon 1994) (imposing a good faith obligation in the performance of contracts and duties governed by the code); *see also id.* § 3.104 (Vernon 2002) (defining "negotiable instrument").

■ Even if the Stacys owed Powell a duty of good faith and fair dealing by virtue of the fact that the May 31 letter related to the enforcement of a negotiable instrument, which we do not decide here[3], Powell has presented no evidence that the Stacys breached that duty. The note Powell and Milton signed waived the right to notice of intent to accelerate and notice of acceleration; therefore, they were not entitled to notice. *See Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex. 1991). Thus, the only required notice was the section 51.002 notice, which was necessary because Powell was using the property as his residence. TEX. PROP.CODE ANN. § 51.002(d). The May 31 letter contained all the information required by section 51.002, which does not require the note holder to include the amount that would be due after acceleration. Furthermore, the only evidence explaining why the incorrect amount was included in the letter is that the Stacys' attorney made a mistake in calculating the total principal and interest due on the note; there is no evidence that the Stacys or their attorney acted dishonestly. *See* TEX. BUS. & COM.CODE ANN. § 1.201(19) (Vernon Supp.2003) (defining

good faith as "honesty in fact in the conduct or transaction concerned"); *Coleman*, 795 S.W.2d at 708.

■ Powell further contends that the notices were not given in accordance with the statute because the substitute trustee violated his duty of fairness and impartiality. When exercising a power in a deed of trust, the trustee becomes a special agent for both parties, and he must act with absolute impartiality and with fairness to all concerned in conducting a foreclosure. *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex.1977); *Stephenson v. LeBoeuf*, 16 S.W.3d 829, 837 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (op. on reh'g). The trustee must conduct the foreclosure sale fairly and not discourage bidding by acts or statements made before or during the sale; however, the trustee has no duty to take affirmative actions beyond that required by statute or the deed of trust to ensure a fair sale. *Peterson v. Black*, 980 S.W.2d 818, 822 (Tex.App.-San Antonio 1998, no pet.). A trustee's duties are fulfilled by strictly complying with the terms of the deed of trust. *Id.; First State Bank v. Keilman*, 851 S.W.2d 914, 925 (Tex.App.-Austin 1993, writ denied) (op. on reh'g).

In this case, the substitute trustee abided by the terms of the deed of trust and section 51.002. The fact that he was also representing the Stacys does not show that he breached his duty of fairness and impartiality. Thus, we overrule Powell's first two issues.

### Inadequacy of Consideration and Regularity of Sale

In his third through fifth issues, Powell claims that the trial court erred (a) in concluding that a valid foreclosure sale was conducted on December 5, 2000 and

---

**3.** The duty of good faith and fair dealing is ordinarily not imposed on the mortga-

gor/mortgagee relationship. *FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex.1990).

(b) in rendering judgment for the Stacys, thus implicitly concluding that the sale was legally and fairly made and was not void as a result of any inadequacy of consideration combined with irregularities in the sale. Powell addresses these issues in a single, integrated argument; thus, we will combine our discussion of these three issues.

According to Powell, the Stacys' bid was far less than the fair market value of the property. Powell claims that this inadequacy of consideration, coupled with irregularities in the sale, rendered the foreclosure void. Powell contends the sale was irregular because (1) he did not receive adequate notice of the sale nor an opportunity to cure, (2) the Stacys did not send his attorney a copy of the notice of foreclosure, and (3) the notice of foreclosure contained a statement of excessive principal and usurious interest.

▆▆▆ Inadequacy of consideration does not render a foreclosure sale void if the sale was legally and fairly made. *Am. Sav. & Loan Ass'n v. Musick*, 531 S.W.2d 581, 587 (Tex.1975); *Tarrant Sav. Ass'n v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475 (Tex.1965); *Sanders v. Shelton*, 970 S.W.2d 721, 726 (Tex.App.-Austin 1998, pet. denied). There must also be evidence of some irregularity, though slight, that caused or contributed to the sale for a grossly inadequate price. *Musick*, 531 S.W.2d at 587; *Sanders*, 970 S.W.2d at 726. The trial court found that the Stacys bid $55,000 for the property, but within the six months prior to the sale, someone had offered to purchase the property for $200,000. However, the trial court did not conclude that the consideration paid by the Stacys was inadequate.

▆▆▆ The threshold issue is whether there were any irregularities in the sale and if so, whether there is proof that those irregularities caused a sale at a grossly inadequate price. *See Charter Nat'l*

*Bank–Houston v. Stevens*, 781 S.W.2d 368, 372 (Tex.App.-Houston [14th Dist.] 1989, writ denied) (interpreting the supreme court's holding in *Musick*). We have already determined that the Stacys complied with section 51.002(d) of the property code by giving Powell the required notice and an opportunity to cure. Accordingly, neither the incorrect statement of principal and interest in the May 31 letter, nor the Stacys' failure to respond to Powell's attorney's inquiries constitute an irregularity in the sale. In addition, we find no authority requiring the substitute trustee to send notice of foreclosure to the debtor's attorney. *See* Tex. Prop.Code Ann. § 51.002(b); *cf.* Tex.R. Civ. P. 647 (requiring sheriff to give notice of sheriff's sale to either judgment debtor or his or her attorney); *Apex Fin. Corp. v. Brown*, 7 S.W.3d 820, 828 (Tex.App.-Texarkana 1999, no pet.) (holding that failure to give notice to judgment debtor or judgment debtor's attorney under rule 647 is an irregularity). Thus, we hold that the Stacys' failure to give notice to Powell's attorney does not constitute an irregularity in the sale.

▆▆▆ Powell further contends that the incorrect statement of principal and interest contained in the notice of foreclosure is an irregularity that caused the property to be sold at a grossly inadequate price. The notice of foreclosure showed the outstanding balance on the note as "$47,400.89 . . ., being principal and interest in the following amounts: $47,396.91 of principal and $21,943.24 of interest. The note is bearing interest at the rate of $19.00 per day thereafter."

▆▆▆ A trustee owes no duty to provide either the debtor or any potential bidders at the foreclosure sale any information about the payoff amount of the underlying obligation. *Sanders*, 970 S.W.2d at 726. Nevertheless, Powell avers that the misin-

formation skewed the foreclosure process and led to an unfair sale because it increased the inherent disadvantage to third party bidders in a foreclosure sale: that the third party bidder must bid cash while the mortgagee need only bid "credit" against the amount due on the note. Powell argues that the overstatement of the amount due on the note discouraged third party bidders who may have bid on the property had they known the Stacys' credit was less than what was listed in the foreclosure notice. According to Powell, third party bidders may have believed that the Stacys could bid credit up to $72,500.

Again, Powell has failed to show that the error was anything other than a mistake. In addition, we disagree with his contention that the irregularity could have caused a grossly inadequate price to be paid for the property. The Stacys bid $55,000, more than the total amount owed on the note. Powell complains that this price is lower than the property's fair market value, which is approximately $200,000. But if third party bidders were discouraged from bidding against a possible credit of $72,500, as Powell claims, then the logical conclusion is that they would not have been prepared to bid cash in an amount close to $200,000, the property's claimed value.

Our review of the evidence shows that, while the notices prepared by the Stacys' attorney in connection with the default and subsequent foreclosure contained errors, and the property may have been sold at the foreclosure sale for less than its approximate fair market value, the foreclosure sale was conducted in compliance with the deed of trust and section 51.002 of the property code. TEX. PROP.CODE ANN. § 51.002. Thus, we overrule Powell's third through fifth issues.

## Conclusion

Having overruled Powell's five issues, we affirm the trial court's judgment.