In re HOME AND HEARTH PLANO PARKWAY, L.P., Debtor.

Home and Hearth Plano Parkway, L.P., Plaintiff,

v.

LaSalle Bank, N.A., F/K/A LaSalle National Bank, LaSalle Bank, N.A., F/K/A LaSalle National Bank as Trustee for the Registered Holders of Deutsche Mortgage & Asset Receiving Corp., Comm 199–1 Commercial Mortgage Pass Through Certificates, by and Through Criimi Mae Services Limited Partnership, Its Special Servicer, and Fiske (Tom) Hanley III, Substitute Trustee, Defendants.

LaSalle Bank, N.S., as Trustee for the Registered Holders of Deutsche Mortgage & Asset Receiving Corp., Comm–1999–1 Commercial Pass–Through Certificates, by and Through Criimi Mae Services Limited Partnership, Its Special Servicer, Counter–Plaintiff and Third Party Plaintiff,

v.

Home & Hearth Plano Parkway, L.P., Counterclaim Defendant,

and

Dale C. Bullough and Thomas Lykos, Jr., Third Party Defendants.

Bankruptcy No. 03–32815–BJH–11. Adversary No. 04–3212–BJH.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Dec. 15, 2004.

Sheila A. Armstrong, Kirkpatrick & Lockhart, LLP, Dallas, TX, Gerrit M. Pronske, Kirkpatrick & Lockhart, LLP, Dallas, TX, for Plaintiff.

Mark A. Hendrix, Sewell & Anderson, LLP, Dallas, TX, Jeffrey Rhodes, Dickstein, Shapiro, Morin & Oshinsky LLP, Washington, DC, Paul C. Webb, Shackelford, Melton and McKinley, LLP, Dallas, TX, Laura L. Worsham, Jones, Allen and Fuquay, Dallas, TX, for Defendants.

### Memorandum Decision and Order

BARBARA J. HOUSER, Bankruptcy Judge.

Before the Court are cross-motions for summary judgment filed by Home & Hearth Plano Parkway, L.P. (the "Debtor"), LaSalle Bank, N.A., as Trustee for the Registered Holders of Deutsche Mortgage & Asset Receiving Corporation, COMM 1999–1 Commercial Mortgage Pass–Through Certificates, by and through Allied Capital Corporation, its Special Servicer ("LaSalle"), and Fiske (Tom) Hanley III, Substitute Trustee (the "Trustee"). Also before the Court is LaSalle's motion to voluntarily dismiss its counterclaim against the Debtor and its third party claims against Dale C. Bullough ("Bullough") and Thomas Lykos, Jr. ("Lykos"), which the Debtor opposes. The Court has jurisdiction over the pending motions in accordance with 28 U.S.C. §§ 1334 and 157.

### Factual and Procedural Background

The Debtor filed a voluntary petition for relief under Chapter 11 on March 17, 2003, thereby commencing this bankruptcy case (the "Case"). At the time of its filing, the Debtor owned a hotel in Plano, Texas (the "Hotel"), which served as collateral for a nonrecourse note in the principal amount of $4,600,000.00, executed by the Debtor on July 28, 1998 and payable to LaSalle.

The note was secured by a deed of trust (the "Deed of Trust") covering the Hotel, an assignment of leases and rents, and a security agreement granting a security interest in, among other things, furniture, fixtures, equipment, inventory, cash and deposit accounts (the "Personal Property") (these documents, each dated July 28, 1998, are collectively referred to as the "Loan Documents").[1] Defendants Bullough and Lykos guaranteed certain payments under the Loan Documents.

Shortly after the Debtor's bankruptcy filing, LaSalle filed a proof of claim in the Case, asserting a secured claim in the amount of $4,853,047.31, and which claim was denoted as Claim No. 1 on the proof of claim register in the Case. Various disputes arose between the Debtor and LaSalle during the Case and, in the context of those disputes, LaSalle repeatedly argued to the Court that the Hotel was valued at no more than $3,360,000, such that the Debtor had no equity in the Hotel. On December 15, 2003, the Court held a hearing to consider: (i) confirmation of the Debtor's Chapter 11 plan, to which LaSalle objected, and (ii) LaSalle's request for relief from the automatic stay, which had been filed on October 6, 2003 and which the Debtor opposed. At the conclusion of the hearing, the Court orally denied confirmation of the Debtor's plan and granted relief from stay in favor of LaSalle. And, on December 31, 2003, the Court entered an order to that effect (the "Order Denying Confirmation").

In the Order Denying Confirmation, the Court found that "[t]he parties stipulated and agreed to the fair market value of the Real and Personal Property ... as represented by the appraisal report admitted as

LaSalle Bank's Exhibit J, as $3,360,000.00. Therefore, as the Claim of LaSalle Bank exceeds this valuation, the Debtor has no equity in the Property ...." The Order Denying Confirmation further provided:

26. It is further ORDERED, ADJUDGED, and DECREED that relief from the automatic stay of Section 362, be, and the same is, hereby granted upon entry of this Order to LaSalle Bank as to its interest in the Real Property to permit foreclosure under the terms of the Deed of Trust, and to pursue any other available state law remedies under the loan documents of [sic] applicable law, to the exclusion of the Debtor and all other creditors.

27. It is further ORDERED, ADJUDGED, and DECREED that relief from the automatic stay of Section 362, be, and the same is, hereby granted to LaSalle Bank as to its interest in the Personal Property to permit collection, demand, and/or a UCC liquidation sale of the Personal Property under the terms of the Security Agreement and loan documents, and to pursue any other available state law remedies to the exclusion of the Debtor and all other creditors.

LaSalle foreclosed on the Hotel on February 3, 2004. At the sale, it was the sole and successful bidder, with a credit bid of $4,740,000.[2] LaSalle took no action to enforce its interest in the Personal Property prior to its foreclosure on the Hotel.

**LaSalle's Claim**

Prior to the commencement of the confirmation hearing on December 15, 2003, the Debtor filed an objection to Claim No. 1 alleging that: (i) it did not reflect post-

---

**1.** The Debtor's assets are the Hotel, the Personal Property, and potential claims against third parties (largely avoidance actions).

**2.** The parties do not dispute that the foreclosure sale was highly publicized and well attended, and that LaSalle's opening bid of $4,740,000.00 was ultimately the sole bid.

petition payments made by the Debtor, (ii) it did not reflect any credit for the proceeds generated by the post-petition sale of a portion of LaSalle's collateral which were paid to LaSalle, and (iii) it included interest, costs and charges not allowable under the Bankruptcy Code. The hearing on the objection was initially scheduled for March 16, 2004. As noted earlier, LaSalle foreclosed on the Hotel in February 2004. After the foreclosure sale and before the hearing on the Debtor's objection to Claim No. 1, LaSalle filed an amended claim, Claim No. 10, which purported to amend Claim No. 1 to reflect the results of the foreclosure sale and its credit bid. Claim No. 10 asserted that after crediting the amount of its bid, LaSalle was still owed the sum of $195,682.92, which was alleged to be an unsecured claim. The day before the hearing on the objection to Claim No. 1, the Debtor filed an amended objection addressing Claim No. 10. At the next day's hearing, the parties ultimately agreed that LaSalle's claim against the estate was allowable in the amount of $4,393,941.55, and any claim over that amount was to be disallowed.[3] The Court entered an Order to that effect on March 24, 2004 (the "Claim Order").

**The Adversary Proceeding**

On March 29, 2004, the Debtor filed this adversary proceeding. In broad brush, the complaint[4] alleges that while the Claim Order limits LaSalle's claim in the Case to $4,393,941.55, LaSalle bid well over that amount—*i.e.*, $4,740,000.00, at the foreclosure sale. Therefore, the complaint alleges that there are surplus proceeds from the foreclosure sale of $346,058.45 (calculated by subtracting $4,393,941.55 from the credit bid of $4,740,-000.00)(the "Claimed Surplus"). The Debtor alleges that the Claimed Surplus must be remitted to it under paragraph 15.2 of the Deed of Trust. The Debtor also alleges that paragraph 15.1(g)(v) of the Deed of Trust limits LaSalle's permissible .bid to the amount of its debt, and that LaSalle breached that provision by bidding a sum greater than the amount allowed in the Claim Order. Count 1 further alleges that as a result of LaSalle's improper bid, the Trustee breached his duty to conduct the foreclosure sale in accordance with the terms of the Deed of Trust, for which the Debtor seeks damages from LaSalle and the Trustee of $346,058.45. In Count 2, the Debtor asserts that the Defendants' failure to turn over the Claimed Surplus violates 11 U.S.C. § 362(a)(3). Count 3 seeks a turnover of the Claimed Surplus under 11 U.S.C. § 542(b), and Count 4 seeks avoidance of the transfer of the Claimed Surplus to LaSalle under 11 U.S.C. § 549(a). Count 5 seeks damages for conversion under Texas law. In Count 6, the Debtor alleges that as of the date of its foreclosure sale, LaSalle received payment of its al-

---

**3.** The amount of LaSalle's allowed claim was calculated as follows: Claim No. 1 ($4,853,-047.31) represented the amount due LaSalle on the petition date. The parties stipulated that during the pendency of the case, the Debtor made post-petition payments to LaSalle in the amount of $459,105.76. LaSalle's pre-petition claim was thus reduced by that amount, leaving a claim of $4,393,941.55.

**4.** The original complaint was filed on March 29, 2004. The Debtor filed an amended com-

plaint, without opposition from LaSalle, on June 18, 2004—the same day it filed its summary judgment motion. The only difference is that the amended complaint adds a claim for forfeiture of principal and interest under the note pursuant to Tex. Finance Code § 305.002. Both parties have addressed the new claim in their briefing. All references in this Memorandum Decision to the complaint refer to the amended complaint filed on June 18, 2004.

lowed claim (per the Claim Order), which included payment of all pre-bankruptcy principal, interest, default interest, late charges and servicing fees. Accordingly, the Debtor asserts that LaSalle's bid, which was in an amount greater than its allowed claim, must have included interest of $346,058.45 that it was not entitled to, and that LaSalle therefore received greater interest than that authorized by bankruptcy law. And, according to the Debtor, under §§ 305.001, 305.002(a), and 305.005 of the Texas Finance Code, LaSalle has forfeited all principal, interest, and any other amounts which it charged and received on its loan. In addition, the Debtor asserts that it is entitled to a penalty of three times the interest LaSalle improperly received, plus attorneys' fees. In Count 7, the Debtor seeks to impose a constructive trust on the Claimed Surplus on the theory that LaSalle realized more than enough to satisfy its allowed claim from the foreclosure sale, yet has refused to deliver the Claimed Surplus to the Debtor. In Count 8, the Debtor alleges that LaSalle violated its duty of good faith and fair dealing under the Deed of Trust by misrepresenting to the Court the value of the Hotel, when it knew it would be bidding $4,740,000.00 at the foreclosure sale. In Count 9, the Debtor alleges that the Claimed Surplus belongs to the Debtor in equity and good conscience. The prayer for relief asks for damages of at least $346,058.45, plus attorneys' fees, principal, interest and any other amounts charged and received by LaSalle, a penalty of three times the amount of the Claimed Surplus, the imposition of a constructive trust on the Claimed Surplus, and pre- and post-judgment interest.

LaSalle admits the critical factual allegations in the complaint—*i.e.*, that its claim in the Case is limited by the Claim Order to $4,393,941.55 and that it bid $4,740,000.00 at the foreclosure sale—but disputes the legal effect of those facts.[5] Conversely, the Debtor admits that the amount owed to LaSalle, when calculated under the terms of the Loan Documents and without reference to bankruptcy law, was not less than $4,989,481.60 as of the date of the foreclosure sale.

As noted previously, the Debtor has moved for summary judgment (i) on all of its claims against both LaSalle and the Trustee, and (ii) on LaSalle's counterclaim against it. LaSalle and the Trustee have cross-moved for summary judgment on all of the Debtor's claims against them, and LaSalle has opposed the Debtor's motion with respect to its counterclaim. Since each of the Debtor's claims, except Count 8, requires a finding that there were surplus proceeds generated by the foreclosure sale, which LaSalle disputes, the Court must first resolve that issue.

### The Arguments of the Parties

The starting point for the Debtor's analysis is the Claim Order, which determined that LaSalle had an allowed claim in the Case of $4,393,941.55. Since LaSalle bid $4,740,000.00 at the foreclosure sale, the Debtor contends that the difference between those two sums constitutes surplus proceeds which are property of its estate. The Debtor asserts that where a creditor tries to enforce its claim against property of the estate, the creditor's recovery is limited to the amount of its allowed claim (calculated in accordance with the Bankruptcy Code), and it cannot recover from

---

5. The Trustee has filed an answer and asserted a crossclaim against LaSalle seeking contribution and indemnity. On June 25, 2004, the Trustee filed a "Notice of Dismissal of Cross–Claim" in which he dismisses, without prejudice, his crossclaim against LaSalle pursuant to Fed. R. Bankr.P. 7041. The Trustee has joined with LaSalle (i) in its motion for summary judgment and (ii) in opposing the Debtor's motion for summary judgment.

estate assets the amount of its debt (calculated in accordance with its loan documents and applicable state law). In other words, the Debtor argues that since LaSalle is trying to enforce its claim against property of the estate, this Court must use $4,393,941.55, and not $4,989,481.60, as the amount owed to LaSalle. Thus, according to the Debtor, the foreclosure sale clearly generated proceeds in excess of LaSalle's allowed claim, since LaSalle bid more than that claim amount at the sale.

In support of its argument, the Debtor notes that under Texas law, surplus proceeds from a foreclosure sale are distributed first to junior lienholders, if any, and then to the mortgagor, giving the mortgagor an interest in those proceeds under Texas law. Since the Debtor remains in bankruptcy, the Debtor asserts that its interest in the Claimed Surplus makes those proceeds property of the estate. Finally, the Debtor asserts that in paying itself the Claimed Surplus, LaSalle has disrupted the bankruptcy claims and distribution process by allowing itself a claim for post-petition interest in contravention of this Court's ruling in the Claim Order and the applicable provisions of the Bankruptcy Code.

In contrast, LaSalle argues that once it was granted relief from the automatic stay, the calculation of the debt owed to it under the note was no longer subject to the limitations set forth in the Bankruptcy Code. LaSalle points out that the Order Denying Confirmation, which granted it relief, did so "*to the exclusion of the Debtor and all other creditors.*" LaSalle contends that the legal effect of the Order Denying Confirmation was to "return[ ] the parties to the legal relationships that existed before the stay became operative, and whatever state law governed the relationship prior to the filing is the law which controls after the stay is lifted." *See Brief in Support of Defendants' Response to Debtor's Motion for Summary Judgment and Cross–Motion for Summary Judgment,* p. 8, ¶ 14 (citing *In re Winslow,* 39 B.R. 869, 871 (Bankr.N.D.Ga.1984)). Therefore, LaSalle asserts that this Court must use the amount owed to it under its note, calculated in accordance with the Loan Documents and applicable state law—*i.e.,* $4,989,481.60, to determine whether the foreclosure sale generated any surplus proceeds. Thus, according to LaSalle, with this debt amount as the starting point, there were no surplus proceeds generated from the foreclosure sale. In fact, LaSalle filed a deficiency claim in the Case—*i.e.,* Claim No. 10, since the Hotel sold for less than its state law calculated debt.

While the parties disagree on many things, they agree that if the foreclosure sale generated surplus proceeds, those funds are property of the Debtor's estate.[6]

---

6. The Debtor's interest in property is determined by reference to state law. *Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Here, the Debtor owned the Hotel when the Case commenced; thus, the Hotel was property of the estate. 11 U.S.C. § 541. Section 554(d) of the Bankruptcy Code provides that unless the court orders otherwise, property of the estate that is not abandoned or administered in the Case remains property of the estate. "Administration" is defined as "a judicial action in which a court undertakes the management and distribution of property. Examples include the administration of a trust, the liquidation of a company, and the realization and distribution of a bankrupt estate." Black's Law Dictionary 46 (8th Ed.2004). Here, the Hotel was not administered or abandoned. Therefore, it remained property of the estate even after the stay lifted, *Catalano v. Commissioner,* 279 F.3d 682 (9th Cir.2002), until the estate's rights were cut off by foreclosure. At that point, the Debtor's interest in the foreclosure proceeds is, under Texas law, limited to any

## Legal Analysis

■ As explained more fully below, the Court concludes, as a matter of law, that no surplus proceeds were generated from the foreclosure sale. Because there are no surplus proceeds, there is no property of the estate which LaSalle has wrongfully refused to turn over to the Debtor. Thus, LaSalle and the Trustee are entitled to a summary judgment on all of the claims asserted against them by the Debtor. In simplified terms, the Court concludes that LaSalle was entitled to calculate its debt in accordance with the Loan Documents and applicable state law (as opposed to the limitations set forth in the Bankruptcy Code). Since LaSalle bid less than its contractual, state law calculated debt amount at the foreclosure sale, there are no excess proceeds to constitute property of the estate. The Court reaches this conclusion based upon the terms of the Order Denying Confirmation, the provisions of the Loan Documents, Texas law, and the structure of the Bankruptcy Code itself, to which we now turn.

First, the Order Denying Confirmation granted LaSalle relief from the automatic stay "to permit foreclosure *under the terms of the Deed of Trust,* and to pursue any other available *state law remedies under the loan documents* of [sic] applicable law, *to the exclusion of the Debtor and all other creditors*" (emphasis added). Thus, the Order Denying Confirmation expressly authorized LaSalle to proceed under the terms of the Loan Documents and Texas law, both of which permit LaSalle to credit bid the amount of its debt, as calculated under the Loan Documents. The Loan Documents define "debt" quite broadly.

Paragraph (d) of the "securing clause" of the Deed of Trust and Security Agreement defines "debt" to include any and all obligations and sums owed to LaSalle under the loan documents—*ie.,*

(a) the debt evidenced by that certain Deed of Trust Note ... of even date with this Deed of Trust, made by Grantor payable to the order of Beneficiary in the principal face amount of Four Million Six Hundred Thousand and No/100 Dollars ($4,600,-000.00), together with interest as therein provided;

(b) the full and prompt payment and performance of all of the provisions, agreements, covenants and obligations herein contained and contained in any other agreements, documents or instruments now or hereafter evidencing, securing or otherwise relating to the Debt (the Note, this Deed of Trust, and such other agreements, documents and instruments, together with any and all renewals, amendments, extensions and modifications thereof, are hereinafter collectively referred to as the "Loan Documents") and the payment of all other sums herein or therein covenanted to be paid;

(c) Any and all additional advances made by Beneficiary to protect or preserve the Mortgaged Property or the lien or security interest created hereby ... or for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances);

surplus remaining after payment of the debt owed to the foreclosing lender and any junior lienholders. *Conversion Properties L.L.C. v. Kessler,* 994 S.W.2d 810 (Tex.App.—Dallas 1999). The parties agree that following relief from stay, proceeds from the foreclosure sale of the Hotel in excess of the amount properly payable to LaSalle, if any, must be turned over to the estate.

(d) Any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due.

■ Paragraph 15.1(g)(v) of the Deed of Trust then provides that LaSalle "may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting the Debt to and against the net sales price after deducting therefrom the expenses of the sale and the costs of the action." This provision expressly authorizes LaSalle to credit bid its "debt," which includes any and all sums owed to LaSalle *under the Loan Documents.*[7]

Paragraph 15.2 of the Deed of Trust also supports the Court's conclusion that the Loan Documents permit LaSalle to bid the full amount of its debt, as that term is defined in the Deed of Trust. That section, entitled "Application of Proceeds," says that the proceeds of sale:

shall be applied, to the extent funds are so available, to the following items in such order as Beneficiary in its discretion may determine:

(a) To payment of the reasonable costs, expenses and fees of taking possession of the Mortgaged Property, and of holding, operating, maintaining, using, leasing, repairing, improving, marketing and selling the same and of otherwise enforcing Beneficiary's rights and remedies hereunder and under the other Loan Documents, including, but not limited to, receivers' fees, court costs, attorneys', accountants', appraisers', managers' and other professional fees, titled charges and transfer taxes.

(b) To payment of all sums expended by Beneficiary under the terms of any of the Loan Documents and not yet repaid, together with interest on such sums at the Default Interest Rate.

(c) To payment of the Debt and all other obligations secured by this Deed of Trust, including, without limitation, interest at the Default Interest Rate and, to the extent permitted by applicable law, any prepayment fee, charge or premium required to be paid under the Note in order to prepay principal, in any order that Beneficiary chooses in its sole discretion.

(d) The remainder, if any, of such funds shall be disbursed to Grantor or to the person or persons legally entitled thereto.

This provision makes clear that the mortgagor (here, the Debtor) is not entitled to any portion of the proceeds of a foreclosure sale until the entirety of the sums

---

**7.** Although the Debtor asserts that this provision limits LaSalle's ability to bid *above* the amount of its debt, the Court disagrees. This language merely says that LaSalle can bid for the collateral, and if it does, it can "pay" the purchase price by crediting the debt against the purchase price. A natural reading of this sentence leads to the conclusion that the word "debt" qualifies the phrase which permits a credit against the net sales price, and does not qualify the phrase which permits LaSalle to bid for the property. In short, Paragraph 15.1(g)(v) does not, by its terms, prohibit La-

Salle from bidding more than its debt. Therefore, even if the Court were to conclude that the amount owed to LaSalle in this context is limited to the amount set forth in the Claim Order, LaSalle would not be in breach of paragraph 15.1(g)(v) of the Deed of Trust by having bid more. In fact, one Texas court has found no irregularity in a foreclosure sale where a junior mortgagee bid an amount in excess of that owed to it on its junior mortgage note. *See Powell v. Stacy,* 117 S.W.3d 70 (Tex.App.—Fort Worth 2003).

owed to the mortgagee (here, LaSalle) under the terms of the Loan Documents are paid. Contractually, therefore, the Debtor has no interest in the proceeds of a foreclosure sale until LaSalle is paid all sums owed to it *under the Loan Documents,* and LaSalle may bid for the property at such a sale by crediting against the purchase price all sums owed to it under the Loan Documents.

■ The result dictated by the Loan Documents is also dictated by Texas law. A mortgagee with the power to sell, such as LaSalle, may purchase at his own sale. *Tarrant Sav. Ass'n v. Lucky Homes, Inc.,* 390 S.W.2d 473 (Tex.1965). That mortgagee can also credit bid. *Merrimac Properties, Inc. v. Combined Financial Corp.,* No. 10–02–00298–CV, 2004 WL 1126307 (Tex.App.—Waco May 19, 2004) (not designated for publication) (a credit given to the property owner by the holder of the note satisfies the requirement that the trustee receive consideration from the purchaser or the property at a trustee's sale); *Bonilla v. Roberson,* 918 S.W.2d 17 (Tex. App.—Corpus Christi 1996) (general rule in Texas permits a noteholder to apply and credit its bid against its note). The amount of the deficiency claim, if any, of a foreclosing mortgagee is calculated by subtracting the foreclosure sale price (or credit bid) from the amount owed under the note. *See Provident Nat. Assur. Co. v. Stephens,* 910 S.W.2d 926 (Tex.1995); *Lairsen v. Slutzky,* 80 S.W.3d 121 (Tex. App.—Austin 2002); *see also Thompson v. Chrysler First Business Credit Corp.,* 840 S.W.2d 25 (Tex.App.—Dallas 1992) (to be entitled to a deficiency movant must establish, among other things, the amount due on the note at the time of the foreclosure and that credit was given to the obligor for the amount received at the sale). Similarly, in an action to recover a deficiency after foreclosure (which must be brought within two years of the foreclosure sale),

the amount of the deficiency is calculated by reference to the amount owed under the loan documents. *See, e.g.,* Tex. Prop. Code § 51.003(a) (Vernon 2004) (stating that if "the price at which real property is sold at a foreclosure sale ... is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section").

■ Notwithstanding the terms of the Order Denying Confirmation, the Loan Documents, and Texas law, the Debtor argues that this Court must determine whether there are surplus proceeds from the foreclosure sale by reference to the Bankruptcy Code's limitations on LaSalle's allowable claim. The Court disagrees, as it believes the Debtor is overlooking the effect of the distinction between the debt owed to a mortgagee under its note, and the amount of that debt which the mortgagee may recover in a bankruptcy case from estate assets by filing a proof of claim.

Although not directly on point, the parties both cite the Court to *In re Five Boroughs Mortgage Co.,* 176 B.R. 708 (Bankr.E.D.N.Y.1995). In *Five Boroughs,* the bank obtained relief from the automatic stay. Pursuant to New York foreclosure law, the state court appointed a referee to compute the debt owed to the bank. Thereafter, the debtor asked the bankruptcy court to determine the allowed amount of the bank's claim in the bankruptcy case, and notified the state court referee that it disputed the amount the bank alleged was owed. The referee stopped computing, believing it appropriate to await the bankruptcy court's ruling on the amount of the bank's claim, which essentially stalled the foreclosure. The

bank therefore returned to the bankruptcy court seeking an order authorizing and/or directing the referee to compute the debtor's obligation to the bank in accordance with state law.

The bankruptcy court concluded that the referee was not bound by the bankruptcy court's determination of the allowed amount of the bank's claim against the estate; and therefore, the amount of the bank's claim for bankruptcy purposes was irrelevant to the referee's duty to compute the amount of the debt owed to the bank. The bankruptcy court persuasively distinguished between the debt owed to the bank on the note, and the portion of that debt which may constitute an allowable claim in a bankruptcy case. The bankruptcy court noted that

> [t]he amount calculated by the court-appointed referee constitutes the debt, owed by the mortgagor to the mortgagee, that can be satisfied (or at least reduced) by the disposition of the mortgaged collateral .... The proceeds from the foreclosure sale, after payment of certain costs and fees, liquidate the mortgagee's security interest in the collateral property. These proceeds are given to the mortgagee, applied to the debt amount as computed by the referee, and serve to reduce or extinguish the mortgagee's debt. The excess proceeds, if any, are returned to the mortgagor. If the proceeds of the foreclosure sale are insufficient to satisfy the mortgagor's debt, the balance of debt, termed the mortgagee's "deficiency claim," can also be pursued by the mortgagee. To this point, the steps taken by the mortgagee to enforce its mortgage lien could have taken place were no bankruptcy case commenced by the mortgagor or, had a bankruptcy case been filed, after the mortgagee obtained relief from the automatic stay. The mortgagee's actions were focused upon the collateral,

rather than against the mortgagor/debtor..... Where the mortgagor has a pending bankruptcy case, the deficiency claim is filed, not against the borrower/mortgagor, but against the pool of assets which comprise the ... bankruptcy estate. The Bankruptcy Code prescribes what portion of each claim against this estate may be allowed. To the extent that a deficiency claim is allowed, it constitutes an unsecured claim that is paid pro rata with other unsecured claims, at a priority set forth by statute. To the extent that the deficiency claim is not allowed, it may not be satisfied by the bankruptcy estate's assets.

*Five Boroughs*, 176 B.R. at 711–12 (citations omitted).

As the *Five Boroughs* court correctly noted, there is a legally significant distinction between the debt owed to LaSalle under the Loan Documents and the allowable claim which LaSalle may assert in the bankruptcy case. As the *Five Boroughs* court further explained:

> [t]he debt amount derives solely from the parties' loan agreement, such as the promissory note. The debt is governed by the parties' contract, and the contract is governed by state law. The claim is the assertion of the right to a distribution from assets in the debtor's bankruptcy estate. The bankruptcy estate is created by federal bankruptcy statute. A creditor is a person who holds a claim against the debtor that arose prior to the date of the petition. The basis of the claim may derive from state law. Thus, the claim may be based upon a contract or a tort. But once the claim is filed against the bankruptcy estate, the amount of the claim allowed to be satisfied by estate assets is governed not by state law, but rather by federal law.

The claim is alterable by the bankruptcy judge (enforcing the Bankruptcy Code). Portions of the claim which the Bankruptcy Code does not allow to be satisfied by a distribution from bankruptcy estate assets are permitted to be carved away and disallowed. The resulting portion of the claim that may be satisfied by some distribution of estate assets constitutes the allowed amount of the claim. The debt, however, is not alterable by the bankruptcy judge.

*Five Boroughs,* at 712 (citations omitted).

██ As the *Five Boroughs* court further noted, once a bankruptcy case is filed, proof of the mortgagee's claim is filed for the full amount of the debt. If relief from the automatic stay is granted, the mortgagee looks to his collateral and if there is a deficiency, looks to satisfy the unsecured deficiency by filing a proof of claim against the estate. When it does so,

[b]ankruptcy law can affect the amount of this *claim.* Portions of the claim may be disallowed even where the proof of claim represents the true and accurate amount of the debt ... [A] bankruptcy estate cannot be the source of satisfaction of some portions of the claim, no matter how valid. That is bankruptcy law. But the Bankruptcy Code does not empower the bankruptcy judge to affect the amount of debt owed by the mortgagor/borrower to the mortgagee/lender. This is a computation performed according to the parties' loan agreement and mortgage contract under state law .... *This sum is not controlled by or subject to bankruptcy law.*

*Five Boroughs,* 176 B.R. at 713 (emphasis in original and citations omitted).

The Court finds the reasoning of the *Five Boroughs* court persuasive and the Debtor's attempts to distinguish it unpersuasive. First, the Debtor notes that the *Five Boroughs* court held that where the mortgagee seeks to collect its deficiency from property of the estate, federal law controls. From this premise the Debtor argues that since LaSalle is seeking to collect its debt from property of the estate, federal law controls and limits the amount of the debt that can be recovered from estate assets. However, in reaching its conclusion, the Debtor overlooks the lifting of the automatic stay and the express authorizations contained in the Order Denying Confirmation. Moreover, the Debtor simply assumes that the Claimed Surplus is property of the estate.

From the Court's perspective, the Debtor has it backwards. While the Hotel was property of the estate, once the stay was lifted to allow LaSalle to exercise its state law rights—*i.e.,* foreclose on the Hotel, the Debtor's remaining interest in the Hotel is determined by reference to state law and the Loan Documents. Both contractually under the Loan Documents and in accordance with Texas law, the Debtor has no interest in the proceeds of a foreclosure sale of the Hotel unless and until there is a surplus over LaSalle's contractual, state law calculated debt. Since there was no surplus over the debt owed to LaSalle under the Loan Documents, there is no property of the estate in which the Debtor has an interest.

The structure of § 1111(b) of the Bankruptcy Code also lends support to the Court's conclusion that LaSalle was legally entitled to bid the full amount of its contractual, state law calculated debt at its foreclosure sale. Section 1111(b) provides that a nonrecourse loan (like LaSalle's) is to be treated as a recourse loan, whether or not recourse exists under applicable non-bankruptcy law. "By giving the lienholder recourse against the debtor personally for the amount of any deficiency, § 1111(b) provides the lienholder the benefit it would otherwise obtain from its non-

recourse loan bargain—*i.e.*, either full payment (or at least a claim against the estate for the full amount of the debt and the ability to vote on the plan to the extent of its claim), or the right to foreclose and bid on the property at public auction." *In re 680 Fifth Ave. Assoc.*, 29 F.3d 95, 97–98 (2nd Cir.1994).

That is why § 1111(b) expressly excepts from recourse treatment a nonrecourse creditor whose collateral is sold under § 363 or is to be sold under a plan or, as noted in by the court in *In re Tampa Bay Associates, Ltd.*, 864 F.2d 47 (5th Cir. 1989), is to be sold through foreclosure by the nonrecourse lender. Under any of those circumstances, the secured creditor has been "allowed the opportunity to preserve the benefit of its bargain with the debtor by purchasing its collateral at a sale, with a credit offset allowed for any bid up to the full amount of the debt. The lender has the opportunity to become the highest bidder and take title to the property, preserving future appreciation for itself if it feels that the sale price is too low," *Tampa Bay Associates*, 864 F.2d at 51, and the lender no longer needs the protection of § 1111(b) recourse treatment.

That is exactly what happened here. LaSalle was granted stay relief so that it could foreclose on the Hotel. At that foreclosure sale, LaSalle bid less than its state law calculated debt and became the owner of the Hotel, preserving future appreciation in the Hotel for itself. And, because LaSalle was permitted to foreclose on the Hotel, it remains a nonrecourse creditor.

 Finally, the Court concludes that the Debtor is barred by the tenets of estoppel and preclusion from asserting that surplus proceeds were generated from the foreclosure sale. In the Order Denying Confirmation, the Court found that the parties had stipulated that the Debtor had no equity in the Hotel. Now, after LaSalle has relied upon the parties' stipulation and the Court's finding that cause existed to grant relief from the stay, and thereafter foreclosed on the Hotel using its state law rights and remedies, the Debtor attempts to change its position and reap what can only be characterized as a windfall, by asking this Court to require LaSalle to not only turn over the Claimed Surplus, but also to forfeit all of the principal and interest under the Loan Documents and pay treble damages.[8] This result would be inconsistent with bankruptcy's equitable pedigree.

 Since a necessary predicate for the success of the Debtor's claims is a finding that there are proceeds from the foreclosure sale over and above the

8. In an effort to deflect the Court's focus from its inconsistent positions, the Debtor asserts that LaSalle is equally guilty of taking inconsistent, and opportunistic, positions. Specifically, the Debtor contends that LaSalle's position that the Hotel was worth only $3,360,000.00 during the Case was inconsistent with its $4,740,000.00 bid at the foreclosure sale. However, the Court sees a difference between the Debtor's actions and LaSalle's actions. LaSalle's bid at the foreclosure sale is not necessarily inconsistent with its position throughout the Case that the Hotel was worth no more than $3,360,000.00. Rather, the size of LaSalle's bid could simply be a reflection of LaSalle's belief, alluded to at the hearing on these motions, that the Hotel may well appreciate in value significantly in the not-too-distant future (due to the not yet completed construction of a hospital nearby), and LaSalle's desire to obtain that future appreciation for itself. In the words of the Fifth Circuit, LaSalle may have opted to "become the highest bidder and take title to the property, preserving future appreciation for itself ...." *Tampa Bay Associates*, 864 F.2d at 51. The Debtor's position that there are surplus proceeds from the foreclosure sale, however, is clearly inconsistent with its stipulation that the Debtor lacked equity in the Hotel less than two months before the foreclosure sale occurred.

amount owed to LaSalle, and since the Court cannot make that finding as a matter of law, the Debtor's motion for summary judgment on its claims against LaSalle and the Trustee is denied, and LaSalle's and the Trustee's cross motion for summary judgment on the Debtor's claims against them is granted.[9]

## LaSalle's Counterclaim and Third Party Claim

LaSalle's counterclaim alleges that prior to the Debtor's bankruptcy filing, the Debtor delivered a check in the sum of $108,632.46 to LaSalle's counsel, to prevent a foreclosure sale scheduled for February 4, 2003. LaSalle further alleges that although a check may have been delivered to its counsel, it never got either the check or the funds, which LaSalle alleges constituted its collateral under the Loan Documents. In addition, LaSalle alleges that the Debtor, Bullough and Lykos diverted at least $20,770.56 of prepaid rents, which also constituted its collateral under the Loan Documents, and that neither that sum nor the $108,632.46 was applied to the ordinary and necessary expenses of owning or operating the Hotel or paid to LaSalle as required by the Loan Documents. LaSalle therefore seeks to recover those sums, plus interest and attorneys' fees, from the Debtor, Bullough and Lykos.

The Debtor's answer alleges that the check was issued during negotiations between the parties in an attempt to settle their differences, and when it became apparent that the settlement would not be consummated, the Debtor stopped payment. It denies that the funds were diverted and alleges that they were returned to the Debtor's prepetition bank account prior to the petition date. The Debtor further contends that LaSalle is not entitled to any rents because LaSalle's debt has been paid in full as a result of the foreclosure sale of the Hotel.

The Debtor has moved for summary judgment on the factual ground that since the $108,632.46 was returned to the Debtor's prepetition bank account, the funds were not diverted and LaSalle had no entitlement to them. The Debtor also contends that since LaSalle's foreclosure sale bid of $4,740,000.00 exceeded the amount owed to it under the Claim Order, LaSalle has been paid in full and its counterclaim seeking recovery of both the $108,632.46 and $20,770.56 in rents fails as a matter of law.

In opposition to the Debtor's motion for summary judgment on the counterclaim, LaSalle argues that even after the foreclosure sale, it continues to be owed at least $249,481.60, since its credit bid was less than its debt when calculated in accordance with the Loan Documents.[10] There-

---

9. Count 8, in which the Debtor alleges that LaSalle violated its duty of good faith and fair dealing under the Deed of Trust by misrepresenting to the Court the value of the Hotel, may not require such a finding. However, the Court notes that under Texas law, there is no implied covenant of good faith and fair dealing in the lender-borrower relationship, and the Debtor has not pointed to any contractual language expressly creating one. *See Hall v. RTC*, 958 F.2d 75, 79 (5th Cir.1992); *D/FW Wheatland Investors, L.P. v. Lehman Bros. Holdings, Inc.*, No. 3-00-CV-2120-BD, 2001 WL 1445950 (N.D.Tx. Nov.13, 2001) (unreported decision); *Lovell v. Western Nat'l*

*Life Ins. Co.*, 754 S.W.2d 298 (Tex.App.— Amarillo 1988). Moreover, the Debtor stipulated to this value at the confirmation hearing. Thus, summary judgment on this count in LaSalle's favor is also appropriate.

10. LaSalle's amended proof of claim (Claim No. 10) states that LaSalle was owed $4,935,682.92 as of the date of foreclosure, leaving $195,682.92 due on the Note after giving credit for its bid. However, there is conflicting evidence in the summary judgment record. In support of its motion for summary judgment, LaSalle submitted the affidavit of Kathleen Olin, Vice President of

fore, LaSalle argues that it is entitled to recover its remaining Personal Property collateral—*i.e.*, the Debtor's remaining cash, and apply those proceeds against the amounts still owing to it. In addition, LaSalle argues that the Order Denying Confirmation lifted the stay to permit it to exercise its state law rights under the Loan Documents, which included "collection, demand, and/or a UCC liquidation sale of the Personal Property under the terms of the security agreement." Moreover, LaSalle argues that it asserted its counterclaim here out of an abundance of caution, believing that it might be considered a compulsory counterclaim to the Debtor's claims against it, but that the counterclaim and crossclaim should be litigated in state court as contemplated by the Order Denying Confirmation. LaSalle therefore contends that the Debtor's summary judgment motion should be denied and LaSalle's counterclaim and third-party claim should be dismissed without prejudice so that those claims may be pursued in state court. Finally, LaSalle argues, pursuant to Fed.R.Civ.P. 56(f), that it needs discovery to develop facts necessary to oppose the Debtor's motion for summary judgment on factual grounds.

 The Court does not believe that further factual discovery is needed for the following reasons, and thus, will proceed to the merits of the Debtor's motion for summary judgment. First, LaSalle failed to satisfy its burden under Rule 56(f) in that it did not allege the specific discov-

ery it needed. The standard for resisting a summary judgment motion on the ground that more discovery is required is set forth as follows:

> Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by rule 56(e) and by specifically demonstrating 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.' The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts, particularly where, as here, ample time and opportunities for discovery have already lapsed. The determination of the adequacy of a nonmovant's rule 56(f) affidavits and the decision whether the grant a continuance thereon rests in the sound discretion of the trial court.

*SEC v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir.1980) (citations omitted). To satisfy the standard for a rule 56(f) continuance, a claim that further discovery or a trial might reveal facts of which the nonmovant is unaware is insufficient; the nonmovant must show why the discovery is needed and how it will allow him to demonstrate a genuine issue of material fact. *Hinds v. Dallas Indep.*

Special Servicing, to which is attached a schedule ("Schedule") showing that as of the date of foreclosure, LaSalle was owed $4,989,481.60, leaving $249,481.60 due on the Note after giving credit for its bid, which is the amount now asserted by LaSalle's counsel in its brief. It appears that the Schedule includes $378,573.84 of default interest, while Claim No. 10 includes only $295,521.40 of default interest. Further, the Schedule gives a credit to the Debtor for a

reserve account, while Claim 10 does not. The difference between $249,481.60 and $195,682.92 (which is $53,798.68) is explained by the adjustments for default interest and the reserve account credit. However, the precise amount which LaSalle claims was due and owing on its note as of the date of foreclosure is immaterial to the resolution of these motions, since either amount exceeds LaSalle's credit bid.

*School Dist.,* 188 F.Supp.2d 664 (N.D.Tx. 2002). Here, although discovery has not yet commenced, LaSalle does not identify with specificity any discovery that it needs in order to oppose the motion and its request for a continuance will be denied.

■ More importantly, however, from the Court's perspective the facts relevant to LaSalle's counterclaim against the Debtor are not in dispute and the motion is ripe for disposition solely on the law. Based upon the undisputed facts, and for the reasons explained more fully below, the Court concludes, as a matter of law, that LaSalle has been paid all that it is entitled to receive from the Debtor's bankruptcy estate, and therefore summary judgment in the Debtor's favor is appropriate.

Under the Loan Documents LaSalle is a nonrecourse creditor. If LaSalle were a recourse creditor, it could have asserted a deficiency claim (calculated by reference to the Loan Documents) against the estate. At that point, the bankruptcy court would have determined, by reference to provisions of the Bankruptcy Code, what portion of the claim was "allowable" against the estate. *In re Brints Cotton Mktg., Inc.,* 737 F.2d 1338, 1341 (5th Cir.1984) (stating that while state law ordinarily determines what claims of creditors are valid obligations, a bankruptcy court is entitled, if authorized by federal bankruptcy statute, "to determine how and what claims are allowable for bankruptcy purposes"); *In re Five Boroughs Mortgage Co.,* 176 B.R. 708 (Bankr.E.D.N.Y.1995). However, because LaSalle is a nonrecourse creditor, it cannot assert an unsecured deficiency claim against the estate after its foreclosure on the Hotel as a matter of law. *See* 11 U.S.C. § 1111(b) and *In re Tampa Bay Associates, Ltd.,* 864 F.2d 47 (5th Cir.1989) (nonrecourse creditor who foreclosed on collateral was not entitled to a recourse

unsecured claim under § 1111(b)). Therefore, LaSalle could not legally assert a deficiency claim against the estate—*i.e.,* Claim No. 10, which LaSalle has conceded. *See LaSalle's Brief in Support of Defendants' Response to Debtor's Motion for Summary Judgment and Cross-motion for Summary Judgment,* pp. 8–9; *see also* Claim Order (in which LaSalle implicitly agreed to the disallowance of Claim No. 10).

■ In what appears to be an attempt to avoid the logical outcome of its concession—*i.e.,* the disallowance of any deficiency claim and summary judgment in the Debtor's favor on the counterclaim, LaSalle argues that its counterclaim is something other than an unsecured deficiency claim. Now, LaSalle asserts that it is entitled to recover the balance of its collateral (the cash currently on hand from pre-foreclosure operation of the Hotel) in order to satisfy the balance of its debt as calculated pursuant to the Loan Documents. However, for the reasons explained more fully below, the Court disagrees.

At the outset, the Court notes that LaSalle took no action to realize upon its remaining Personal Property collateral (*i.e.,* the cash on hand) prior to its foreclosure on the Hotel. Ultimately, this timing disparity will be significant.

Rather, LaSalle chose to proceed first against the Hotel. As noted previously, the parties agree that LaSalle foreclosed on the Hotel in February 2004, and purchased the Hotel at the foreclosure sale with a successful bid of $4,740,000.00. With respect to the Debtor's claims against LaSalle, the Court has held that LaSalle's foreclosure sale did not generate any surplus proceeds which constitute property of the estate because the estate had no interest in those proceeds once the stay was lifted until there was a surplus

over the "debt" due to LaSalle under the Loan Documents. *See supra* at pp. 606–609. Since there was no such surplus, the estate had no interest in the foreclosure proceeds.

However, unlike the foreclosure proceeds, the estate continues to have an interest in the cash on hand. That cash remains in the Debtor's possession and the Case remains pending. But, LaSalle's allowed claim in the Case as determined by the Claim Order has been paid. Thus, LaSalle is not entitled to receive any further payments on its allowed claim and it is not entitled to realize on any more of its collateral.[11] While there may be a deficiency amount still owing to LaSalle theoretically—*i.e.*, the difference between its state law calculated claim and the sale price of $4,740,000.00 (now asserted by LaSalle to be in excess of $249,000), LaSalle agreed in the Loan Documents that its loan was "nonrecourse," and LaSalle has no right to assert a further claim against the Debtor or its estate. *See supra* at pp. 608–609.

For these reasons, the Debtor's motion for summary judgment on LaSalle's counterclaim is granted and LaSalle's request for dismissal of its counterclaim is denied.

■ That leaves LaSalle's request for dismissal of its third party claims against Bullough and Lykos. LaSalle wishes to litigate its claims against the guarantors in state court. In light of the Court's previous rulings granting LaSalle's motion for summary judgment on the Debtor's claims against it, and granting the Debtor's motion for summary judgment on LaSalle's counterclaim, there is no need for this Court to address LaSalle's rights, if any, against the guarantors. Indeed, this Court may not have jurisdiction over LaSalle's claims against the guarantors. This Court has jurisdiction over three types of claims: (i) those that "arise in" the Case, (ii) those that "arise under" the Bankruptcy Code, and (iii) those that are "related to" the Case. 28 U.S.C. § 1334(b); *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir.1987). LaSalle's claims against the guarantors do not "arise in" the Case or "under" the Bankruptcy Code. At this point in the Case, it is hard to see how the claims could be "related to" the Case, since the outcome of that dispute will have no effect on the remaining estate being administered in bankruptcy. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *In re El Paso Refinery, L.P.*, 302 F.3d 343, 348 (5th Cir.2002) (stating that a matter is "related to" a bankruptcy case "if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy") (quoting *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir.1995)). Accordingly, LaSalle's

---

11. Had LaSalle chosen to liquidate its collateral in reverse order—*i.e.*, to conduct a UCC liquidation sale of the Personal Property followed by a foreclosure on the Hotel, it could have liquidated both without running afoul of either the Claim Order or applicable state law. By way of illustration, if LaSalle had proceeded first against the Personal Property once the stay was lifted, it would not have been paid in full presumably on either its allowed claim in the Case (per the Claim Order) or on its state law calculated debt (per the Loan Documents) after conducting that UCC liquidation sale. Then, unless it bid more at the foreclosure sale of the Hotel than its remaining state law calculated debt, there still would have been no surplus proceeds to constitute property of the estate. By proceeding first against the Hotel, however, LaSalle put itself in the position where its allowed claim in the Case was fully satisfied by virtue of its bid at the Hotel foreclosure sale, leaving no claim to be paid from the remaining Personal Property collateral which is property of the estate.

motion to dismiss its third party claims against Bullough and Lykos is granted.

For the reasons stated in this Memorandum Decision, it is

**ORDERED** that the Debtor's motion for summary judgment on its claims against LaSalle and the Trustee is denied; and it is further

**ORDERED** that LaSalle's and the Trustee's motion for summary judgment on the Debtor's claims against them is granted; and it is further

**ORDERED** that LaSalle's motion to dismiss its counterclaim against the Debtor is denied; and it is further

**ORDERED** that the Debtor's motion for summary judgment on LaSalle's counterclaim against it is granted; and it is further

**ORDERED** that LaSalle's motion to dismiss its third party claims against Bullough and Lykos is granted without prejudice.