**In re FIVE BOROUGHS MORTGAGE CO., INC., Debtor.**

**Bankruptcy No. 892–86323–20.**

United States Bankruptcy Court,
E.D. New York,
Westbury Division.

Jan. 23, 1995.

Gary Ginsburg, Theodore T. Mairanz, David Selengut, Neiman Ginsburg & Mairanz P.C., New York City, for debtor.

Scott A. Steinberg, Nicholas Tanelli, Melanie F. Finkel, Brown Raysman & Millstein, New York City, for CrossLand Federal Sav. Bank.

J. James Carriero, P.C., East Elmhurst, NY, for debtor in State Court.

Scott Y. Stuart, Garden City, NY, Office of the U.S. Trustee.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

### Preliminary Statement

Prior to its making the instant motion

("Motion"),[1] mortgagee CrossLand Federal Savings Bank ("Bank") obtained relief from the automatic stay to proceed with its state court foreclosure action. The debtor ("Debtor")[2] then moved before this Court for a determination of the allowed amount of the Bank's claim. The referees appointed by the state court ("Referees") ceased computing the outstanding debt to the Bank, effectually paralyzing the foreclosure action. The Bank reacted by filing the within Motion, pursuant to which it requests this Court to render an order compelling and/or authorizing the Referees to proceed with their duty to compute the debt outstanding under the parties' loan and mortgage documents, rather than await the outcome of Debtor's motion. Accordingly, the Bank's Motion requires the Court to determine whether a referee appointed in a foreclosure action should await—or be at all concerned with—a bankruptcy court's calculation of the allowed amount of the foreclosing mortgagee/bank's claim against the bankruptcy estate.

### Relevant Factual History

By order dated December 21, 1993, this Court granted the Bank relief from the automatic stay.[3] *See* 11 U.S.C. § 362(d). This permitted the Bank to pursue its rights as a mortgagee in certain of Debtor's real property. The Bank then had the state court in which the foreclosure action was pending appoint the Referees to compute the outstanding debt owed by Debtor. The Bank furnished the Referees with the amounts it alleged to be the outstanding debt due, and documents with which to support such allegations.

Debtor subsequently filed a motion with this Court for an order fixing the amount of the Bank's claim. *See id.* § 502(b); Fed. R.Bankr.P. 3012. Debtor also notified the Referees that it disputed the amount the Bank alleged was owed. The Referees ceased computing the debt due the Bank as mortgagee, believing it appropriate to wait for this Court's decision determining the amount of its claim. Debtor's counsel approved of and encouraged the Referees' hesitation. *See* Debtor's Reply to the Bank's Motion ¶ 5.[4] By way of an order to show cause, the Bank initiated the Motion at bar for an order directing and/or authorizing the Referees to proceed with their duties to compute Debtor's obligation to the Bank in accordance with their appointment by the state court in the foreclosure action.

### Parties' Arguments

The Bank alleges that the Referees have an existing duty to compute the amount of the outstanding debt due it under its loan and mortgage agreement with Debtor. The Bank believes the Referees' duties have in no way been suspended or stayed.

Debtor contends that this Court can and should determine the allowed amount of the

---

1. The Court has jurisdiction over this case pursuant to sections 1334, 157(a) and 157(b)(1) of title 28, United States Code and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). The Motion is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (O) (1994).

2. Debtor's case is one of three related bankruptcy cases that were procedurally consolidated by the Court. For purposes of this opinion, we will deal with such entities as one debtor.

3. The Court's decision to terminate the automatic stay as to the Bank was not a difficult one. Debtor had different counsel for the lift stay hearing, at which the Court heard evidence on the value of the collateral. To the slight extent this counsel was prepared for the hearing, the evidence presented as to the collateral's value was vastly inferior to that presented by the Bank. The Court criticized Debtor's counsel for the

frivolity of the postures taken, and expressly preserved the issue of attorney sanctions for another day. The Bank, of course, continues to have standing and leave to file its own motion requesting an appropriate sanction award. *See* Fed. R.Bankr.P. 9011.

4. Debtor's attorneys write:

Two of the referees, Lucille S. DiGirolomo and Myron Schulman, appointed in Crossland's State Court foreclosure action against the Debtor's properties, should be complimented on their withdrawal and retraction of their computation of the amount due Crossland, when they realized that the computation of the amount owed by the Debtors to Crossland involves 11 U.S.C. Section 506(a), a bankruptcy issue, which is not in their province or expertise.... The referees declined to proceed pending the Bankruptcy Court's determination as to what is owing to Crossland as of this date.

Debtor's Reply to Bank's Motion ¶ 5.

Bank's claim. This contention has sparked little controversy. But Debtor further maintains that the Referees should await this Court's determinations, since the referees will be bound by such determinations. Alternatively, even if the Referees will not be bound by the Court's determinations, Debtor believes the Referees should wait for the Court's calculations since they can nevertheless be helpful to the Referees, promoting economy.

There are reasons why Debtor urges that the Referees should not perform their computations before this Court determines the allowed amount of the Bank's claim. First, Debtor correctly argues that the allowed amount of the Bank's claim as determined by this Court is likely to be lower than the amount of the outstanding debt computed by the Referees. This result is mandated because under the Bankruptcy Code certain portions of a claim against a bankruptcy estate are not allowable. *See, e.g.,* 11 U.S.C. §§ 502(b); 506(b). These are described further below, but they include those components of certain creditors' claims which (for example) represent demands for attorneys' fees and for interest which accrued on claims subsequent to the bankruptcy petition. Debtor stresses that these items would be unallowable portions of the Bank's claim against Debtor's bankruptcy estate. These items *would* be part of the Referees' computations of the outstanding debt, for they were provided for in the parties' loan and mortgage documents. If the Referees are not bound by the Court's determinations, then such items would be included in their computations. This would render the debt as computed by the Referees larger than the allowed amount of the claim as determined by the Court. But if the Referees would be bound by the Court's determinations, then obviously their computations would be identical to that of the Court's. Necessarily, then, arguing that the Referees are bound by the Court's determinations lowers the Bank's

debt. One question accordingly is whether the Referees are bound by the Court's determination of the allowed amount of the Bank's claim.

As stated, Debtor also argues that this Court's determination of the Bank's claim will facilitate and expedite the Referees' tasks of computing the total amount due. The logic is that even if the Referees are not bound by the Court's determinations, it would be advantageous in any event to have the Referees wait.

Debtor maintains that it can pay the Bank the amount determined by this Court to redeem the mortgaged property prior to the foreclosure sale. Or, if Debtor does not redeem and the property is sold by foreclosure, the proceeds received will be applied to reduce the claim amount calculated by this Court. The Bank disputes this logic, noting that the Referees' use of the figure that constitutes this Court's determination of the allowed amount of its claim would render all resulting calculations inaccurate.

## DISCUSSION

Our order to show cause scheduled oral argument upon the Bank's Motion and mandated that those served include the Referees and that they file responsive papers. The Referees disregarded our order, failed to appear before the Court at oral argument and refused to file papers. Their disregard of our order, and their failure to ascertain this Court's stance on the Motion, contributed to what we believe was their irresponsible neglect of the duties they assumed by oath pursuant to a state court appointment. Debtor furnished the Referees with wool and the Referees pulled it over their own eyes without compulsion. Such is not exemplary behavior, either for referees [5] upon whom courts and litigants are depending, or for attorneys at law cognizant of the public's current impression of the bar's members.

---

5. The Court is cognizant of the sparse sum received by a referee appointed to compute. We do not contend that a referee must run about putting out the fires created by a mortgagor; however, as an attorney the referee is an officer of the court. As an officer, a referee has at minimum the responsibility to attempt to rectify the dilemma a court might have, especially where such concerns have been laid out in a served order to show cause. Ignoring the order is the reaction furthest from prudence.

■ The proposition that the Referees must be bound by, or that the Referees should even regard, this Court's determination of the allowed amount of the Bank's claim against the Debtor's bankruptcy estate is incorrect. The allowed amount of the Bank's claim against the Debtor's bankruptcy estate is an amount that is entirely distinguishable from the calculation that the referees were appointed to compute. Mere logic dictates this result; therefore, our analysis need only track the following relevant fundamentals.

### Basics Regarding Mortgages, the Automatic Stay and Referees

Though the filing of a bankruptcy petition operates as an automatic stay against a creditor with a secured claim, relief from this stay eliminates its effects. 11 U.S.C. § 362(a), (d); *see, e.g., Fidelity Nat'l Bank v. Winslow (In re Winslow)*, 39 B.R. 869, 871 (Bankr.N.D.Ga.1984). Relief in the instant case in favor of the Bank entitled it to pursue its rights, as mortgagee, in the Debtor's real property. *See, e.g., Hood v. Williams (In re Hood)*, 92 B.R. 648, 656 (Bankr.E.D.Va.), *aff'd*, 92 B.R. 656 (E.D.Va.1988); *Winslow*, 39 B.R. at 871.

■ The borrower's default in its obligations under a loan and mortgage agreement triggers certain rights in favor of the mortgagee. One of the mortgagee's rights is to seek a judgment of foreclosure and to have the collateral property sold. In order for a judgment of foreclosure and sale to be entered, it is necessary to establish the amount due the mortgagee, for which judgment will be entered. "The computation may be made either by the court or by a referee appointed for that purpose. It is only rarely, however, that judges themselves compute, and the customary practice is to appoint a referee." 2 MORTGAGES AND MORTGAGE FORECLOSURE IN NEW YORK § 33:16 at 47 (Laurel Pauls Lester et al. eds., rev. ed. 1993) (citing N.Y. Real Prop.Act.Proc.Law § 1321; *Mahnk v. Blanchard*, 233 A.D. 555, 253 N.Y.S. 307 (1931)).

■ The amount of the mortgage lien is simply a computation: "Ordinarily, a mortgage lien consists of the outstanding principal of the debt, with interest due thereon to the date of the referee's computation, together with any amounts paid by the mortgagee to protect [its] security on account of overdue taxes and assessments which the mortgagor has refused or neglected to pay, plus the costs and disbursements incident to the foreclosure action." *Id.* § 36:2 at 6 (citing *Dollar Federal Sav. & Loan Assoc. v. Herbert Kallen, Inc.*, 91 A.D.2d 601, 456 N.Y.S.2d 430 (1982)).

■ The amount calculated by the court-appointed referee constitutes the debt, owed by the mortgagor to the mortgagee, that can be satisfied (or at least reduced) by disposition of the mortgaged collateral. Disposition is usually done by way of a published foreclosure sale of the collateral property. The proceeds from the foreclosure sale, after payment of certain costs and fees, liquidate the mortgagee's security interest in the collateral property. These proceeds are given to the mortgagee, applied to the debt amount as computed by the referees, and serve to reduce or extinguish the mortgagor's debt. The excess proceeds, if any, are returned to the mortgagor. If the proceeds of the foreclosure sale are insufficient to satisfy the mortgagor's debt, the balance of debt, termed the mortgagee's "deficiency claim," can also be pursued by the mortgagee.

To this point, the steps taken by the mortgagee to enforce its mortgage lien could have taken place were no bankruptcy case commenced by the mortgagor or, had a bankruptcy case been filed, after the mortgagee obtained relief from the automatic stay. The mortgagee's actions were focused upon the collateral, rather than against the mortgagor/debtor. The mortgagee usually chooses to make the foreclosure sale disposition of the collateral the first method of collecting the debt.

■ As stated, the mortgagee has a deficiency claim where the foreclosure sale proceeds are not sufficient to satisfy in full the debt as computed by the referees. After the foreclosure sale, the balance of the mortgagee's rights must be asserted against the mortgagor/borrower, rather than against any collateral. Where no bankruptcy case is

filed, the mortgagee is free to attempt collection of the unsecured deficiency claim against the mortgagor. The deficiency claim may be reduced to judgment and docketed, and the lender's pursuit of the borrower's other assets can begin.

■ A bankruptcy case commenced by the mortgagor would alter the circumstances. Where the mortgagor has a pending bankruptcy case, the deficiency claim is filed, not against the borrower/mortgagor, but against the pool of assets which comprises the borrower/debtor's bankruptcy estate. *See* 11 U.S.C. §§ 501(a); 541(a); Fed.R.Bankr.P. 3002. The Bankruptcy Code prescribes what portion of each claim filed against this estate may be allowed. *Id.* § 502(b). To the extent that a deficiency claim is allowed, it constitutes an unsecured claim that is paid pro rata with other unsecured claims, at a priority set forth by statute. *Id.* §§ 502(a), (b); 726(a). To the extent that the deficiency claim is not allowed, it may not be satisfied by the bankruptcy estate's assets. *See id.* §§ 726(a)(2); 502(b). To the extent that the full deficiency claim, including both the allowed and unallowed components, is not satisfied by bankruptcy estate assets, the lender (now an unsecured mortgagee) can pursue collection against the corporate borrower's post-bankruptcy case assets. If the corporation is not dissolved, these post-bankruptcy assets may be pursued since they are not property of the bankruptcy estate, and a corporate debtor is not discharged of the debt. 11 U.S.C. § 727(a)(1). Ordinarily, though, the corporate debtor is dissolved after liquidation proceedings in bankruptcy. If the debtor is an individual, he or she will be discharged from liability for the deficiency claim. *See id.* Under these two latter circumstances, collection from the bankruptcy estate is important since post-bankruptcy collection is unlikely.

### Debts Versus Claims Against the Estate

This background should make it possible to demonstrate the distinction between the *debt* that is owed by the borrower to the lender and the *claim* that is filed against the bankruptcy estate.

The *debt* constitutes all those proceeds that flowed from the lender to the borrower, and all other proceeds for which the borrower is responsible under the loan agreement (such as accrued interest, taxes, and attorneys' fees for which the borrower is contractually responsible), less all proceeds which were returned to the lender by the borrower, for which the borrower must get credit. The debt amount derives solely from the parties' loan agreement, such as the promissory note. The debt is governed by the parties' contract and the contract is governed by state law.

■ The *claim* is the assertion of the right to a distribution from assets in the debtor's bankruptcy estate. *See, e.g.,* 11 U.S.C. §§ 501; 726(2). The bankruptcy estate is created by federal bankruptcy statute. *Id.* § 541(a). A creditor is a person who holds a claim against the debtor that arose prior to the date of the bankruptcy petition. *Id.* § 101(10). The basis of the claim may derive from state law. Thus, the claim may be based upon a contract or a tort. But once the claim is filed against the bankruptcy estate, the amount of the claim allowed to be satisfied by estate assets is governed not by state law, but rather by federal law. *Id.* § 502(b).

The claim is alterable by the bankruptcy judge (enforcing the Bankruptcy Code). *Id.* §§ 502(b); 506(b). Portions of the claim which the Bankruptcy Code does not allow to be satisfied by a distribution from bankruptcy estate assets are permitted to be carved away and disallowed. *Id.* § 502(b). The resulting portion of the claim that may be satisfied by some distribution of estate assets constitutes the *allowed* amount of the claim. *Id.*

The debt, however, is not alterable by the bankruptcy judge. The debt is the finite amount that, essentially, is the amount received by the borrower (or on the borrower's behalf), less the amounts for which the borrower must get credit pursuant to the loan contract between the borrower and lender. A mortgage lien only affects the lender's course of action. It allows the lender to reduce or fully satisfy the outstanding debt by first forcing a sale the borrower's mortgaged property, before looking to the borrower personally (that is, the borrower's oth-

er assets) where there has been a default. Before the foreclosure sale, the debt is simply computed by the appointed referees. No alteration may be made to the debt amount by any bankruptcy court or by the referees. The parties' debt is not an alterable amount. After the foreclosure sale, the debt is the sum owed by the borrower to the lender, less credits for foreclosure sale proceeds received by the lender. As stated, this is referred to as the deficiency, and it is similarly not an alterable amount.

Once the bankruptcy case is filed, proof of this hypothetical mortgagee's claim is presumably originally filed for the full amount of the outstanding debt. 11 U.S.C. § 501(a). Then, as in the case at bar, relief from the automatic stay may be granted to allow the mortgagee/lender to enforce its mortgage rights in the collateral. *Id.* § 362(d). The collateral is looked to first to reduce or eliminate the debt. The mortgage is pursued and enforced notwithstanding the bankruptcy case. The creditor returns to the bankruptcy court to pursue that portion of the debt (if any) which was not satisfied by the foreclosure sale of the collateral. The bankruptcy estate is where the lender looks to receive payment of this unsatisfied, unsecured deficiency debt. This is done by filing a claim against the bankruptcy estate. It may be the lender's original proof of claim. Or the lender may simply amend the proof of claim already filed to reflect the debt's correct amount, which is the debt less the foreclosure sale proceeds received by the lender.

Bankruptcy law can affect the amount of this *claim. See, e.g.,* 11 U.S.C. §§ 501(b); 506(b). Portions of the claim may be disallowed even where the proof of claim represents the true and accurate amount of the deficiency debt. *See id.* A bankruptcy estate cannot be the source of satisfaction of some portions of the claim, no matter how valid. That is bankruptcy law.

But the Bankruptcy Code does not empower the bankruptcy judge to affect the amount of *debt* owed by the mortgagor/borrower to the mortgagee/lender. This is a computation performed according to the parties' loan agreement and mortgage contract under state law by a state court or a referee appointed by the state court to compute the debt. The debt must be computed to a sum certain. *This sum is not controlled by or subject to bankruptcy law.* This debt amount is reduced by the proceeds of the foreclosure sale. The resulting amount, the deficiency claim, may still not be affected by the bankruptcy court—until it is the foundation of a proof of claim.

After the automatic stay has been modified for the mortgagee, the correct amount of any claim that may be filed against the bankruptcy estate fully depends upon a prior correct state court or referee computation of the debt. Whatever claim is asserted against the bankruptcy estate is contingent first upon the referee's computation, and second upon the proceeds of the foreclosure sale. Bankruptcy law cannot affect the amount of the deficiency claim before it is filed against the bankruptcy estate. The bankruptcy court should play no part in the computations by the referee before or after the foreclosure sale.

The calculation by a bankruptcy court of the *allowed* amount of the claim once it is filed in the bankruptcy case is a different matter. The bankruptcy court is not determining the amount of the debt owed by the borrower (though this may be necessary before the allowed amount can be ascertained). Rather, the bankruptcy court is determining what part of the claim the Bankruptcy Code permits to be satisfied by a distribution from bankruptcy estate assets. From the amount of the filed claim, the bankruptcy court must parse away those portions of the debt—if any—which are not allowed. This is the allowed amount of the creditor's claim against bankruptcy estate assets.

The allowed amount of a creditor's claim is a figure that is of *no concern* to referees appointed by a state court within the context of a foreclosure action. The allowed amount of a creditor's claim has no bearing on the amount of debt that the referees were appointed to compute. Once the referee has performed the appropriate computations, the bankruptcy court's resolution of the debtor's motion for a determination of the allowed amount of the debtor's claim will be facilitated. The bankruptcy court may find a refer-

ee's computation very useful in determining the allowed amount of a claim against a bankruptcy estate. This is especially so if the referee segregates the items that made up the debt. But it is not a two way street: though the bankruptcy court may look into the referee's computations, the referee should ignore those of the bankruptcy court.

In addition to the farce that referees should be concerned with or bound by the bankruptcy court's determination of the allowed amount of a mortgagee/bank's claim, it should be especially stressed that such determination *cannot stay* the referees. It is difficult to imagine a referee considering his or her duties stayed by a debtor having merely filed a motion. There is even less reason where the automatic stay was terminated even before the debtor filed the motion. The concept that a stay may be obtained by the plain filing of a motion is not one that should be blindly accepted by an attorney at law.

**The Parties to the Instant Motion**

Debtor at bar had no prerogative to concoct the concept of a stay by its motion. The Referees should have viewed with skepticism the concept of a stay without an order or notice by any court. This might have given a layperson pause, but not a lawyer. It is, and should appear to any lawyer, senseless. But the Referees threw their hands up and asked no questions. The referees made no effort to educate themselves, and of this we cannot approve.

Were Debtor's logic allowed, it could be applied to affect adversely mortgagor-mortgagee relations in each bankruptcy case. Every mortgagor could institute a bankruptcy case prior to the foreclosure sale of the mortgaged property regardless of the mortgagor's prospects for reorganization or the amount of equity it has in the collateral. The mortgagor could simply allow the automatic stay to be vacated. Then, the mortgagor could again use the bankruptcy case to delay the mortgagee's foreclosure action even after the automatic stay has been terminated. The mortgagor need only file a motion for a determination of the allowed amount of the mortgagee's claim. Under Debtor's scenario, the referee's computation of the outstanding debt must halt. The foreclosure action must halt also since the referee's computations are an integral part of the action. If the referees were then forced to use the amount determined by the bankruptcy court to be the allowed amount of the mortgagee's claim, the mortgagor would then have successfully reduced the amount of the *debt* improperly. In all cases, the amount of the mortgagee's claim against the bankruptcy estate would be equal to or less than the true amount of the mortgagor's debt. The mortgagor would always be capable of stripping from its outstanding debt any amount which is not allowed to be asserted against the bankruptcy estate under *bankruptcy* law. Then the mortgagor could offer payment of this smaller amount to redeem the property, or use this smaller amount for the purposes of settlement negotiations. If the property is still sold by way of a foreclosure sale, the resulting deficiency claim would be inaccurate. These are all improper results.

Upon modification of the automatic stay in favor of a mortgagee, a referee appointed "to compute" is permitted to calculate the debt owed by the mortgagor to the mortgagee and arrive at a sum certain. Termination of the automatic stay signifies that the referee can perform this duty without concern for the pending bankruptcy case.

A debtor's motion for a determination of the allowed amount of a mortgagee's claim is not to be viewed by a referee as any type of a stay. The referee should have no use for the bankruptcy court's determination of the allowed amount of the mortgagee's claim against the bankruptcy estate under bankruptcy law. It is improper for a debtor, after the stay has been modified or terminated as to a mortgagee, to stall the mortgagee's foreclosure proceedings by threatening the lingering bankruptcy case. Absent explicit instruction otherwise, a referee has no cause to delay performing the duties which he or she assumed. The mortgagor, the mortgagee, the state court where the foreclosure action is pending and the bankruptcy court all will rely upon the referee's computation of the outstanding debt to a sum certain.

At bar, Debtor's request for a determination of the allowed amount of the Bank's

claim, after the Bank obtained relief from the automatic stay, constituted a ploy to delay further the foreclosure action. Debtor's counsel is much too wise for the Court to believe that counsel misconceived the difference between the allowed amount of the Bank's claim and Debtor's outstanding debt to the Bank. A sophisticated bankruptcy lawyer would recognize that these are distinct items. Admittedly, though, the ploy was effective. Debtor's motion was calculated to paralyze the Referees as well as the Bank and its foreclosure action. Debtor hoped to reduce its debt to the Bank to the allowed amount of the Bank's claim, and to begin negotiating from that amount. If negotiations were unsuccessful, the property could be redeemed for this lower amount. Even if the property were sold by foreclosure, Debtor would have been successful in lowering the deficiency claim. Under this scenario, any personal liability for the deficiency claim would have been lower.

At oral argument, it was apparent that Debtor's learned counsel knew the difference between the allowed amount of a mortgagee/creditor's claim and the debt that court-appointed referees are employed to compute. Suffice it to say that there existed a comprehension of the mischievous position taken. Counsel's position shed light for no one, save for the Referees who stood, like deer, frozen therein.

For the foregoing reasons, the Court holds that nothing about the Debtor's bankruptcy case, nor any motion pending before the Court, should be construed as staying the appointed Referees from carrying out the duties which they assumed by oath.

**SO ORDERED.**