### In re SOLID ROCK DEVELOPMENT CORPORATION, INC., Debtor.

**Robert Trauner, Chapter 7 Trustee for Solid Rock Development Corporation, Inc., Plaintiff,**

**v.**

**State Bank and Trust Company, Successor in Interest to The Buckhead Community Bank, Defendant.**

**Bankruptcy No. 10–72777–WLH. Adversary No. 12–5238.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Sept. 27, 2012.

J. Michael Lamberth, Michael J. Bargar, Lamberth, Cifelli, Stokes, Ellis & Nason, Atlanta, GA, for Plaintiff.

Douglas D. Ford, Quirk & Quirk, LLC, Atlanta, GA, for Defendant.

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

WENDY L. HAGENAU, Bankruptcy Judge.

This matter is before the Court on the cross motions for summary judgment filed by the Plaintiff Trustee and Defendant secured creditor. The Trustee's Complaint seeks to recover the amount of the Defendant's credit bid in a foreclosure sale conducted after stay relief was granted, consisting of statutory attorney's fees in excess of the fees allowable under the Eleventh Circuit's decision in *Welzel v. Advocate Realty Invs. (In re Welzel)*, 275 F.3d 1308 (11th Cir.2001). For the reasons stated below, the Court grants in part and denies in part each of the cross motions and directs the parties to set an evidentiary hearing on the value of the property and the amount of allowable fees.

#### Factual Background

The parties largely agree on the undisputed material facts of this case.

On or about February 3, 2009, the Debtor Solid Rock Development Corporation, Inc. ("Solid Rock") executed two promissory notes secured by a deed to secure debt and security agreement. State Bank and Trust Company ("SB & T") is the holder of the notes and the security deed. On April 30, 2010, the Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code. The Debtor scheduled the property subject to the security deed ("Property") and also scheduled the claim of SB & T. SB & T filed a proof of claim in the amount of $1,522,825.13 including principal, interest, late charges, and actual attorney's fees. The proof of claim asserts the property value is $1,500,000.00. The bankruptcy case was converted to one under Chapter 7 of the Bankruptcy Code on January 31, 2011, and the Plaintiff Trustee was appointed as trustee.

On August 6, 2010, SB & T filed a motion for relief from the automatic stay. On May 6, 2011, the Court entered an order modifying the automatic stay, which order was prepared by counsel for SB & T and signed as "not opposed" by counsel for the Trustee. The order provided:

> The automatic stay of 11 U.S.C. § 362 of the Bankruptcy Code is modified to allow SB & T to exercise its rights and remedies under applicable law, including foreclosure of its security interest in the Property, promptly accounting to the Trustee for any proceeds received in excess of the lawful claim of SB & T.

Based upon this order, SB & T sent to the Debtor a notice of acceleration and foreclosure sale on September 21, 2011. The notice included the language required under O.C.G.A. § 13–1–11 to perfect a creditor's right to attorney's fees—that if principal and interest were not paid within 10 days of the date of the letter, attorney's fees as allowed by O.C.G.A. § 13–1–11 would also be owed.

Since the Debtor did not pay SB & T the amounts that were due, SB & T conducted a foreclosure sale of the Property on November 1, 2011, and credit bid its debt in the amount of $2,025,182.00. The credit bid was applied to the balance owed to SB & T at the time, including principal and interest, but also including statutory

attorney's fees in the amount of $262,386.87. There is no question that the statutory attorney's fees exceed the amount of actual attorney's fees incurred by SB & T, although the precise amount of actual, reasonable attorney's fees has not been stipulated by the parties.

### Summary of Arguments

This dispute centers on SB & T's claim to statutory attorney's fees in calculating any surplus owed to the Trustee. Georgia law, O.C.G.A. § 13–1–11, provides:

> Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to subsection (b) of this Code section and to the following provisions:

> (1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15% of the principal and interest owing on said note or other evidence of indebtedness;

> (2) If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15% of the first $500 of principal and interest owing on such note or other evidence of indebtedness and 10% of the amount of principal and interest owing thereon in excess of $500; and

> (3) The holder of the note or other evidence of indebtedness or his or her attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, endorser or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement. . . .

The Trustee argues this case is governed by the Eleventh Circuit decision in *Welzel,* where the court held that, notwithstanding the provisions of the contract or the provisions of O.C.G.A. § 13–1–11, the creditor was limited under Section 506(b) to the recovery of reasonable attorney's fees. 275 F.3d at 1315. The Trustee therefore argues that SB & T could not recover statutory attorney's fees through its foreclosure sale. The Trustee argues further that the credit bid by SB & T of the statutory fees constitutes a cash bid in excess of the allowable claim of SB & T, and SB & T must therefore pay to the Trustee the amount of the credit bid in excess of the allowable claim.

SB & T argues in response that, once the stay is lifted, this Court no longer has jurisdiction to determine if there are excess proceeds from the foreclosure to be paid to the Trustee, and that any such claim regarding the excess proceeds is not a core proceeding. SB & T also argues that, once the stay is lifted, it is entitled to collect the full amount allowed under state law, notwithstanding any limitations which bankruptcy law might provide. Finally, SB & T argues that the credit bid was not really a cash bid and therefore there is no surplus to return.

After review of the cross motions, the responses and replies of each party, the Court holds as follows:

1. This Court has jurisdiction to construe its order modifying the automatic stay and to adjudicate the amount, if any, of excess proceeds due the Trustee following the foreclosure sale.

2. This matter is a core proceeding because it involves the turnover of property of the estate, the construction of an order modifying the automatic stay, the allowance of claims against the estate, the determination of the validity and extent of SB & T's lien, and also is a proceeding affecting the liquidation of the assets of the estate. 28 U.S.C. § 157(b)(2).

3. The order modifying the automatic stay was broad enough to permit SB & T to send the notice under O.C.G.A. § 13–1–11.

4. Under the terms of this relief from stay order, as between SB & T and the Debtor (Trustee), *Welzel* continues to apply to determine if there are any excess proceeds due to the Trustee after a foreclosure sale, particularly since the order modifying the automatic stay specifically retains the right of the trustee to receive the excess proceeds.

5. The foreclosure bid was a credit bid and does not necessarily reflect the extent to which the creditor recovered fees in excess of those allowable under Section 506(b). Consequently, the Court will schedule an evidentiary hearing as to the value of the Property and the amount of allowable fees to determine if the Defendant received property in excess of its allowable claim (principal, interest, and actual, reasonable attorney's fees).

### Trustee's Objection to SB & T's Final Brief

The Trustee filed an "Objection to Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment" [Docket No. 19], arguing that the "Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment" [Docket No. 18] filed on July 19, 2012 ("Defendant's Final Brief") was not timely. The Defendant's Final Brief appears to be a response to the "Trustee's Reply in Support of the Trustee's Motion for Summary Judgment". Therefore, rather than construing Defendant's Final Brief as a late-filed reply in support of its own Motion for Summary Judgment, the Court views it as an additional pleading in the chain opposing the Trustee's Motion for Summary Judgment.

Although the Local Rules do not provide for the filing by the Defendant of this Final Brief, the Court will allow it and has reviewed it. Similarly, the Court will allow and has reviewed the Trustee's filing at Docket No. 19 as a "Response to Reply". Here, the Defendant's Final Brief was filed only two days after the Trustee's timely reply was filed in the chain regarding the Trustee's Motion for Summary Judgment. Given the shortness of time between the two, the consideration of the final pleadings filed by both the Plaintiff and the Defendant did not slow the Court's review of the matter. Moreover, the issues raised by Defendant's Final Brief were not new and in fact were raised in the Trustee's Reply. For those reasons, the Court has considered and will consider all of the pleadings filed by both parties in this case.

### Jurisdiction

SB & T argues the Court does not have jurisdiction over the proceeds of the foreclosure sale. However, this argument is based on an erroneous understanding of the effect of granting stay relief and is not the law in this jurisdiction. SB & T bases

its argument on several cases, none of which are from Georgia or the Eleventh Circuit. Of the cases cited by SB & T, only one actually holds that the Bankruptcy Court does not have jurisdiction to hear and determine the amount of the surplus owed to the Trustee.

In *Home & Hearth Plano Parkway, L.P. v. LaSalle Bank, N.A. (In re Home & Hearth Plano Parkway, L.P.)* 320 B.R. 596 (Bankr.N.D.Tex.2004), the court exercised jurisdiction to determine the amount of the surplus, but determined that, under its order granting relief from the stay, the loan documents, and Texas state law, the amount of the surplus would be calculated in accordance with Texas law, notwithstanding Section 506(b). Similarly, in *Williams v. Seabreeze Fin., LLC (In re 7303 Holdings, Inc.)*, 2010 WL 3420477 (Bankr.S.D.Tex. Aug. 26, 2010), the court also exercised jurisdiction to determine the amount of the surplus owed to the debtor. In that case, the challenge to the amount of the surplus was brought by a junior creditor and the court exercised jurisdiction to determine the amount of the surplus available to the junior creditor on the basis that any payment on the junior creditor's claim would have an effect on the claims in the bankruptcy case and ultimately on any final surplus due to the debtor. *Id.* at *3–4. In *In re Five Boroughs Mortg. Co.*, 176 B.R. 708 (Bankr. E.D.N.Y.1995), the question of jurisdiction was not determined by the court. Instead, the bankruptcy court addressed whether the state court referees charged with determining the amount of the debt for purposes of a judicial foreclosure action must await a decision by the bankruptcy court as to the amount of the allowed secured claim. *Id.* at 715.

The only case cited by SB & T that actually stands for the proposition the court has no jurisdiction to determine the surplus is *Wells Fargo Bank, N.A. v. 804 Congress, L.L.C. (In re 804 Congress, L.L.C.)*, 2012 WL 1067566 (W.D.Tex. Mar. 28, 2012). There, the court held the bankruptcy court did not have jurisdiction to determine the amount of the surplus. *Id.* at *7–8. However, that case is not binding on this Court, and is inconsistent with all of the rulings in this jurisdiction.

▮ In this District, it is clear that modifying the automatic stay is not equivalent to abandonment of the property. Abandonment is permitted under 11 U.S.C. § 554 only after notice and a hearing or upon the closing of a case if the property has been scheduled and otherwise administered. Neither of those events occurred in this case. Instead, only a motion to modify the automatic stay to permit foreclosure was filed. As Judge Cotton stated in *In re Ridgemont Apartment Assocs.*, 105 B.R. 738 (Bankr.N.D.Ga. 1989),

> [t]ermination of the automatic stay is neither analogous to, nor the equivalent of, an abandonment of property of the estate. Notwithstanding relief from the stay, the bankruptcy court's jurisdiction of the property continues, but is subject to being changed. For example, a surplus resulting from a foreclosure sale continues to be property of the debtor's estate, subject to the bankruptcy court's exclusive jurisdiction, even though relief from stay has been granted to the secured creditor.

*Id.* at 741. (citations omitted). *See also Old West Annuity & Life Ins. Co. v. Apollo Grp.*, 605 F.3d 856, 863 (11th Cir.2010); *Catalano v. Commissioner*, 279 F.3d 682, 686–87 (9th Cir.2002) ("When a bankruptcy court lifts, or modifies, the automatic stay, it merely removes or modifies the injunction prohibiting collection actions against the debtor or the debtor's property. Although the property may pass from the

control of the estate, that does not mean that the estate's interest in the property is extinguished.... Thus, an order lifting the automatic stay by itself does not release the estate's interest in the property ....") (citations omitted). This estate's interest in any potential surplus resulting from the foreclosure by SB & T remains property of the estate and therefore is subject to being determined by this Court. The Court, therefore, retains jurisdiction to determine if there is a surplus resulting from the foreclosure sale and to direct that such property be turned over.

■■■ Moreover, it is also without argument that the Court can exercise jurisdiction to construe its own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009); *see also Arrow Oil & Gas, Inc. v. J. Aron & Co. (In re Semcrude, L.P.)*, 442 B.R. 258, 272 (Bankr.D.Del.2010); *In re Eveleth Mines, LLC*, 312 B.R. 634, 641–42 (Bankr. D.Minn.2004) ("As a general matter, a court has the authority to interpret, clarify, apply, and enforce its own orders, especially where its jurisdiction to enter the original order was not and is not at issue."). Thus, the Court also has jurisdiction of this matter to construe the stay relief order and its effect on the foreclosure.

■■■ Finally, the Court determines this matter is a core proceeding under 28 U.S.C. § 157. SB & T has filed a proof of claim in the case and this action involves the turnover of property of the estate, the construction of an order modifying the automatic stay, the allowance of claims against the estate, the determination of the

validity and extent of SB & T's lien, and also is a proceeding affecting the liquidation of the assets of the estate, all of which are core under 28 U.S.C. § 157(b)(2).

### Effect of Stay Relief Order

■■■ In this case, the Order Modifying the Automatic Stay was submitted by counsel for SB & T and signed as "not opposed by the Trustee". It provided the stay was modified "to allow SB & T to exercise its rights and remedies under applicable law". While this language is not as clear as it could be, the Court believes this language is broad enough to permit SB & T to do what is necessary to put both its debt and the Property in a posture to foreclose on the Property. This language is broad enough to permit SB & T to send an acceleration notice if one has not previously been sent, to provide all the notices of foreclosure that are required under Georgia law, and also to send the notice required under O.C.G.A. § 13–1–11. The statutory attorney's fees are part of SB & T's state law claim. Perfecting the right to statutory attorney's fees by sending notice not only implicates the ability of the creditor to credit bid statutory attorney's fees, but also implicates suits versus guarantors, rights *vis-à-vis* junior creditors and other issues. Moreover, giving the notice required under O.C.G.A. § 13–1–11 is necessary to assert even an unsecured claim under *Welzel* for the statutory attorney's fees in excess of actual, reasonable attorney's fees.[1]

■■■ This Court is not identifying any other actions that may be taken by a se-

---

1. It is not clear that sending the notice under O.C.G.A. § 13–1–11 is required for an oversecured creditor to recover actual, reasonable attorney's fees only. *See JP Morgan Chase Bank v. ELL 11, LLC*, 414 B.R. 881, 884 (M.D.Ga.2008) (awarding attorney's fees to creditor who failed to comply with O.C.G.A. § 13–1–11); *In re Amron Techs.*, 376 B.R. 49, 51 (Bankr.M.D.Ga.2007) (holding for oversecured creditor despite failure to comply with O.C.G.A. § 13–1–11).

cured creditor with a similar stay relief order nor any other language that may suffice to permit the sending of notices. It is clear in this District that the language of this relief from stay order would not include the right to confirm the foreclosure sale, *see Bank of Am. Nat'l Trust & Sav. Ass'n v. Virginia Hill Partners I (In re Virginia Hill Partners I)*, 110 B.R. 84, 87 (Bankr.N.D.Ga.1989), or allow junior creditors to exercise their rights to the property. *Clower v. Le Jardin at Baytowne (In re Clower)*, 463 B.R. 573, 578 (Bankr. N.D.Ga.2011). The Court cautions attorneys to be more specific in their proposed orders as to the actions to be permitted, as well as any actions the trustee or debtor clearly do not intend the lender to take. Nevertheless, the Court rules in this case that SB & T was permitted to send the letter under O.C.G.A. § 13–1–11 and did not violate the automatic stay by doing so.

### *Statutory Attorney's Fees*

This leads the Court to the question raised by the Trustee as to whether a secured lender which credit bids statutory attorney's fees once relief from the stay has been granted owes the trustee the difference between the statutory fees and actual reasonable fees. The Court begins its analysis with 11 U.S.C. § 506(b), which provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for under

the agreement or State statute under which such claim arose.

Thus, this section determines the amount of a creditor's secured claim in the bankruptcy case.

██ SB & T argues that, once relief from the stay is granted, the Bankruptcy Code no longer applies to determine the amount of its secured claim. The Court disagrees. As stated above, relief from the automatic stay is not equivalent or analogous to an abandonment of the property. The real property which is the subject of this relief from stay order remains property of the estate until it is conveyed to someone other than the debtor. Moreover, any surplus arising as a result of the foreclosure also remains property of the estate unless relinquished by the trustee. In this case, the Trustee specifically reserved his right to any surplus arising from the foreclosure in the order modifying the stay. Allowing statutory attorney's fees would reduce any surplus owed to the estate. As discussed above, the Eleventh Circuit in *Welzel* held that, while statutory attorney's fees were part of the allowed claim under 11 U.S.C. § 502, 11 U.S.C. § 506(b) limited the collection of those attorney's fees as part of a secured claim (as opposed to an unsecured claim).[2]

██ Since both the real property and the surplus remain property of the estate, Section 506(b) continues to govern the amount of SB & T's secured claim. *See, e.g., Henthorn v. GMAC Mortg. Corp. (In re Henthorn)*, 127 Fed.Appx. 15, 16–17 (3rd Cir.2005) (debtor having excluded the claim of the creditor and the property securing the creditor's claim from the chapter 13 plan and estate, and being free of the obligation to remit any profits from

---

**2.** In *Welzel*, the Eleventh Circuit allowed the balance of the statutory attorney's fees to be an allowed unsecured claim since the fees were permitted under state law. Neither par-

ty has raised the question in this case as to whether the statutory attorney's fees of SB & T could be allowed as an unsecured claim, and the Court expresses no opinion thereto.

the sale to the estate, can no longer assert Section 506(b) applies to limit attorney's fees); *see also In re Hungerford,* 2001 WL 36211305, at *21 (Bankr.D.Mont. March 22, 2001) (when considering motion for relief from stay in chapter 7 case, courts consider entitlement to fees under Section 506(b) in determining whether there is equity in the property); *Parker v. Concorde Ltd. P'ship (In re Concorde Ltd. P'ship),* 67 B.R. 717, 725 (Bankr.E.D.Tenn.1986) (if payment of the creditor's attorney's fees is from property of the estate, Section 506(b) continues to apply).

SB & T relies upon the decision in *Home & Hearth* for the proposition that the calculation of SB & T's claim is determined exclusively by state law, and not limited by Section 506(b). That case, however, has important distinguishing factors. First, it is a case based on Texas law and not Georgia law. Second, the Texas court is not bound by the *Welzel* decision. Third, the creditor in *Home & Hearth* was a non-recourse creditor. 320 B.R. at 608–09. It only had a claim in the bankruptcy case for so long as the collateral remained property of the estate. 11 U.S.C. § 1111(b)(1)(A). Allowing the creditor to use only a state law calculation to determine the surplus was consistent with its rights under Section 1111(b). Fourth, the relief from stay order, which was construed by the bankruptcy court, specifically provided that the stay was lifted "to the exclusion of the debtor and all creditors." *Id.* at 603. Certainly, this language is much stronger for the creditor than the relief from stay order here. Finally, the court denied the secured creditor the right to recover cash collateral still in the possession of the debtor because, although the creditor's state law claim was not fully satisfied, his allowed claim in the bankruptcy case had been. *Id.* at 612–14. Thus, the bankruptcy court continued to recognize the importance of applying bankruptcy principles when dealing with property of the estate.

SB & T's reliance on *Five Boroughs* is equally misplaced. That decision, like this one, recognizes the difference between the state law claim and an allowed claim in bankruptcy and refused to enjoin the state court referees from fixing the amount of the state law claim for purposes of the foreclosure. 176 B.R. at 715. The court did not determine anything about a surplus after foreclosure, and instead noted that, if a claim for a deficiency were filed, the Bankruptcy Code would apply to determine the amount of the allowed claim and may result in a reduction of any deficiency claim. *See id.* Moreover, the court noted the amount of the debt fixed by the state court referees was the amount the debtor could tender for purposes of redemption under state foreclosure law. *Id.* It is appropriate then to use the state law calculation of debt in connection with the debtor's exercise of a state law remedy of redemption, as opposed to the exercise of bankruptcy rights. In both cases cited by SB & T, the Court finds the facts distinguishable, the cases not binding and ultimately not persuasive on the facts of this case.

The Trustee argues that *Welzel* and Section 506(b) preempt state law regarding attorney's fees. The Court believes the Trustee overstates the case. The only portion of bankruptcy law that "preempts" state law is the allowability of the statutory fees to an oversecured creditor as part of its secured claim in the bankruptcy case. The preemption is not as to attorney's fees in general, or as to the recoverability of those fees from parties other than the Debtor. Nevertheless, the Trustee is correct that *Welzel* holds Section 506(b) limits the amount of attorney's fees that are part of a secured claim.

The Court holds that the *Welzel* analysis applies in determining whether a surplus exists after foreclosure *vis a vis* a bankruptcy estate as long as the surplus remains property of the estate. It is important to note here that the property was never abandoned, either by notice or by operation of the closing of the case. Moreover, the stay relief order specifically reserved the right of the Trustee to the surplus and therefore the estate's interest in the surplus. Consequently, the Bankruptcy Code continues to apply in determining the extent of that surplus.

Furthermore, this holding is consistent with the way secured lenders are treated throughout the bankruptcy case. There is no doubt under *Welzel* and Section 506(b) that SB & T's secured claim would be limited to the amount of actual, reasonable attorney's fees if the Trustee had sold the Property. Moreover, there is no doubt that, if the sale were held under 11 U.S.C. § 363 and SB & T chose to credit bid, the amount of the credit bid would be limited to actual, reasonable attorney's fees. 11 U.S.C. § 363(k). There is, therefore, no reason to treat the determination of the surplus claim, which is also property of the estate, any differently. Allowing statutory attorney's fees in a foreclosure setting where the surplus remains property of the estate allows the secured creditor potentially to recover more than its allowed secured claim at the expense of the unsecured creditors, who would of course share in any surplus claim. Accordingly, the Court holds that, in determining the amount of a surplus claim to be returned to a trustee, *Welzel* and Section 506(b) limit the amount of attorney's fees to actual, reasonable attorney's fees.

It is important to understand what the Court is not addressing. The Court is not ruling that a creditor may not credit bid its statutory attorney's fees. The Court is not addressing whether the creditor can collect the statutory attorney's fees from guarantors or other obligors. The Court is not addressing whether the creditor may assess statutory attorney's fees before determining distribution to junior creditors. Moreover, the Court notes that the purchaser of the property at a foreclosure sale becomes its owner, and, upon the property's subsequent sale, the purchaser of the property at foreclosure is entitled to keep all profits ultimately received from that sale regardless of the amount bid. This order only limits the calculation of attorney's fees in determining whether a surplus is owed to the estate in accordance with *Welzel* and 11 U.S.C. § 506(b).

### Credit Bids

It is not clear to the Court, however, that the Defendant actually received the statutory attorney's fees. It is undisputed by the parties that SB & T was the high bidder at the foreclosure sale, and it is also undisputed that it bid in its statutory attorney's fees. What is unclear to the Court is whether the credit bid of statutory attorney's fees is a reflection of the value of the Property. Perhaps there were competing bids, and the bid was necessary from SB & T's perspective for SB & T to obtain possession of the Property. Perhaps the credit bid was an acknowledgement by SB & T that it considered the debt satisfied for its own purposes. Perhaps SB & T simply did not think through the ramifications of the credit bid it made. If SB & T unilaterally bid in the entire debt, including statutory attorney's fees, but the value of the Property actually does not support the amount bid in, SB & T did not receive a surplus to which the Trustee is entitled. SB & T in that circumstance would not have received a windfall or an amount in excess of its allowed

secured claim, but rather would have satisfied its claim. While the Trustee is correct that Georgia law views a credit bid as cash for purposes of foreclosure, it does not follow that a credit bid is equivalent to cash for all purposes. *See, e.g., United States Trustee v. Tamm (In re Hokulani Square, Inc.)*, 460 B.R. 763, 771 (9th Cir. BAP 2011) (credit bid not cash for purposes of determining Trustee fee under 11 U.S.C. § 326(a)). The question then turns on the actual value of the Property.

█ The Trustee obviously agreed there was no equity in the Property for the estate when he did not oppose the motion for relief from stay. The burden is therefore on the Trustee to show excess value existed. While SB & T's credit bid is evidence of the value of the Property, it is not the final determination. The Trustee has made his *prima facie* case that the value of the Property equals the amount credit bid. The burden now shifts to SB & T to show that the value is less than the amount bid in. Still, the Trustee has the ultimate burden of establishing by a preponderance of the evidence his right to a refund.

█ The parties have not stipulated to the amount of the actual, reasonable attorney's fees to be allowed. The Trustee, in his Complaint, alleges that actual, reasonable attorney's fees are "approximately $30,000.00". If the parties cannot stipulate to that amount, the Court must determine it, but only if the value of the Property exceeds the principal and interest owed. To the extent the actual value of the Property exceeds principal, interest and actual, reasonable attorney's fees, the Trustee will be entitled to recover the difference from SB & T. On the other hand, if the actual value of the Property does not exceed principal, interest and actual, reasonable attorney's fees, judgment will be for SB & T. The parties are directed to contact chambers to set the date for an evidentiary hearing.

**IT IS ORDERED.**

